**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| SHAUN CORDEIRO and KEVIN MATLACK, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GREP ATLANTIC, LLC, and EDDY OWNER, L.L.C. <br><br> Defendants. | **CASE NO.:** 1:23-CV-12901-AK |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS**
**<u>CERTIFICATION</u>**

0

**Table of Contents**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 2

    A. Greystar operates Massachusetts apartment complexes under a single, uniform structure, and each Massachusetts tenant signs the same form lease............ 2

    B. Greystar charges tenants attorney's fees and court costs based on receipt of invoices. ................................................................................................................ 3

    C. Plaintiffs are model class members................................................................. 3

III. LEGAL STANDARD FOR CLASS CERTIFICATION ......................................... 4

IV. ARGUMENT............................................................................................................ 4

    A. Massachusetts Public Policy Strongly Favors Class Certification for Consumer Claims Under Chapter 93A............................................................................ 5

    B. Greystar's Records Readily Identify the Class and the Class Is Administratively Feasible ........................................................................................................ 6

        i. *The Class is Defined by Objective Records* ..................................................... 6

        ii. *Greystar Cannot Weaponize Their Own Record-Keeping Limitations to Defeat Ascertainability.* ....................................................................................... 7

        iii. *Identifying Exceptions Using Public Dockets is a Standard Administrative Task.* ........................................................................................................... 7

    C. The proposed class satisfies the four requirements of Rule 23(a)................................ 8

        i. *Numerosity. Greystar's Records Confirm Thousands of Tenants Were Assessed Legal Fees.* ....................................................................................... 8

        ii. *Commonality. Greystar's Admitted, Uniform Fee-Charging Policy Establishes Commonality.* ................................................................................... 9

        iii. *Typicality. Plaintiffs' Claims Arise from the Exact Same Form Lease and Uniform Policy as the Absent Class Members* .............................................. 10.

        iv. *Adequacy. Plaintiffs and their counsel will fairly and adequately protect the interests of the class.* .................................................................................. 12

D. Rule 23(b)(3) is Satisfied Because Defendants' Uniform Policies Predominate Over Any Individualized Inquiries. ...................................................................................... 13

    i.   *Individualized issues do not predominate* ..................................................... 14.

    ii.   *Damages can be determined on a class-wide basis from Greystar's records.* ...................................................................................................... 15

    iii.   *The class definition itself ensures that the class consists of injured persons* .......................................................................................................... 16

E. Superiority. A class action is the superior method for fairly and efficiently adjudicating these claims. ....................................................................................................... 17

F. In the alternative, the Court should certify an injunctive class under Rule 23(b)(2).. 18

V. PROPOSED CLASS NOTICE AND APPOINTMENT OF CLASS COUNSEL ................. 19

VI. CONCLUSION ........................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................................ 21

## **Table of Authorities**

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ......................................................................................... 4, 13

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985).............................................................................. 12

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
469 Mass. 813 (2014) ......................................................................................... 11

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
12 F.4th 81 (1st Cir. 2021) ................................................................................. 14

*Baker v. Equity Residential Mgmt., L.L.C.*,
390 F. Supp. 3d 246 (D. Mass. 2019)................................................................... 5

*Bartok v. Hometown Am., LLC*,
No. 23-cv-13074, 2026 U.S. Dist. LEXIS 7345 (D. Mass. Jan. 8, 2026) ................................... 4

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................... 7

*Blake v. Hometown Am. Cmtys., Inc.*,
486 Mass. 268  (2020) .......................................................................................... 5

*Colantuoni v. Alfred Calcagni & Sons, Inc.*,
44 F.3d 1 (1st Cir. 1994)........................................................................................ 2

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .............................................................................................. 15

*Donovan v. Philip Morris USA, Inc.*,
2012 U.S. Dist. LEXIS 37974 (D. Mass. Mar. 21, 2012) .................................... 10

*Feeney v. Dell Inc.*,
454 Mass. 192 (2009) ............................................................................................ 5

*Fletcher v. Cape Cod Gas Co.*,
394 Mass. 595 (1985) ............................................................................................ 5

*Friendly Fruit, Inc. v. Sodexho, Inc.*,
    529 F. Supp. 2d 158 (D. Mass. 2007)......................................................................... 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................................... 18

*Gammella v. P.F. Chang's China Bistro, Inc.*,
    482 Mass. 1 (2019) .................................................................................................... 11

*Garcia v. E.J. Amusements of N.H., Inc.*,
    98 F. Supp. 3d 277 (D. Mass. 2015).......................................................................... 10

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)......................................................................................... 9

*Hebert v. Vantage Travel Serv., Inc.*,
    334 F.R.D. 362 (D. Mass. 2019) ................................................................................... 6

*Hermida v. Archstone*,
    826 F. Supp. 2d 380 (D. Mass. 2011).......................................................................... 17

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) ................................................................................... 11

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008)...................................................................................... 4, 13

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015)............................................................................... 6, 15, 16

*Manning v. Bos. Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013).............................................................................. 2, 15, 18

*Mantha v. QuoteWizard.com, LLC*,
    347 F.R.D. 376 (D. Mass. 2024) ............................................................................ 9, 10

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012).............................................................................. 6, 12, 13

*McCuin v. Sec'y of Health & Human Servs.*,
    817 F.2d 161 (1st Cir. 1987)......................................................................................... 9

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................................... 18

4

*Mora v. Harley-Davidson Credit Corp.*,
2012 WL 1189769 (E.D. Cal. 2012) ................................................................................ 15

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......................................................................................................... 15

*Nightingale v. Nat'l Grid USA Serv. Co.*,
107 F.4th 1 (1st Cir. 2024) ............................................................................................... 16

*Perry v. Equity Residential Mgmt., L.L.C.*,
2014 WL 4198850 (D. Mass. Aug. 26, 2014) ........................................................ 5, 11, 17, 18

*Powers v. Receivables Performance Mgmt., LLC*,
801 F. Supp. 3d 17 (D. Mass. 2025) .............................................................................. 7, 16

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ..................................................................................... 8, 14, 15, 16

*Salvas v. Wal-Mart Stores, Inc.*,
452 Mass. 337 (2008) ....................................................................................................... 14

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
540 F. Supp. 3d 182 (D.R.I. 2021) .......................................................................... 8, 10, 14

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) .................................................................................... 4, 5, 8, 13

*South Orange Chiropractic Center, LLC v. Cayan LLC*,
No. 15-13069-PBS, 2016 WL 1441791 (D. Mass. Apr. 12, 2016) ................................. 11

*Tardiff v. Knox Cnty.*,
365 F.3d 1 (1st Cir. 2004) .............................................................................................. 7, 15

*Tassinari v. Salvation Army*,
349 F.R.D. 10 (D. Mass. 2025) ................................................................................. Passim

*Thrower v. Citizens Disability, LLC*,
No. 20-10285-GAO, 2022 WL 3754737 (D. Mass. Aug. 30, 2022) ................................ 7

*Torres v. E.I. Dupont de Nemours & Co.*,
219 F.3d 13 (1st Cir. 2000) ................................................................................................ 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..................................................................................................... 16, 18

5

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ............................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 4, 9, 19

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000)............................................................................ 14, 15

*Weld v. Glaxo Wellcome Inc.*,
  434 Mass. 81 (2001) ............................................................................................ 14

*Yaffe v. Powers*,
  454 F.2d 1362 (1st Cir. 1972)............................................................................... 19

**Statutes**

M.G.L. c. 93A, § 9 ................................................................................................ 10
M.G.L. c. 93A, §§ 2 and 9 ...................................................................................... 9
M.G.L. c. 186, § 20 ............................................................................................... 10

**Rules**

Fed. R. Civ. P. 23(b)(3)(A)-(D) .............................................................................. 17
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 7, 19
Federal Rule of Civil Procedure 23 ........................................................................... 5
Mass. R. Civ. P. 23 ............................................................................................. 5, 6
Rule 23(a).............................................................................................................. 8
Rule 23(a)(1) ......................................................................................................... 9
Rule 23(a)(2) ......................................................................................................... 9
Rule 23(a)(4) ....................................................................................................... 12
Rule 23(b)(2)................................................................................................... 18, 19
Rule 23(b)(3)......................................................................................................... 5
Rule 23(b)(3)................................................................................................... 18, 19
Rule 23(g) ........................................................................................................... 19

**Regulations**

940 C.M.R. § 7.07................................................................................................... 9

**Other Authorities**

1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:45 (6th ed.)............... 11

6

## I. INTRODUCTION

When Defendant GREP Atlantic, LLC ("Greystar")[1] seeks to evict Massachusetts tenants like Plaintiffs Shaun Cordeiro and Kevin Matlack ("Plaintiffs"), Greystar has a uniform process to extract its eviction related legal fees[2] without court oversight by posting these fees onto the tenant's ledger as money owed even though no court has ordered a tenant to pay these fees. **See Exhibit A** (Greystar 30(b)(6)) Dep. 92:20-24; 94:14-20; 103:8-14. The majority of courts never consider assessing these Legal Fees, but the tenants are forced to pay them anyways to stay in their homes. *Id*. at 34:10-20; 61:23-62:4; 92:20-24; **Exhibit B** (Shaun Cordeiro Dep.) 156:7-9; 159:5-12. As discussed in detail herein, Greystar's Rule 30(b)(6) testimony establishes that Greystar's practice is uniform, the form lease is uniform, and the accounting systems are uniform. **See Exhibit A** at 19:3-7; 41:3-8; 63:4-12. Greystar's electronic records identify every class member, every charge, and every payment and any gaps in its software can be filled by invoices or court records. *Id.* 25:1-12; 26:19-29; 48:20-22. Whether Greystar is allowed to immediately assess these Legal Fees absent court approval is the subject of Plaintiffs' Motion for Partial Summary Judgment, but there's no dispute tenants are subjected to these Legal Fees in the same manner throughout Massachusetts. Greystar's own Standard Operating Procedure ("SOP") 2130 titled 'Eviction' directs employees to add legal fees to a tenant's balance upon initiation of eviction proceedings. See Exhibit H. Thus, class certification under Rule 23(b)(3) is plainly warranted based upon Greystar's common practice applicable to all putative class members. In the alternative, the Court should certify an injunctive class under Rule 23(b)(2) to halt Greystar's practice. As discussed herein, each requirement of Rule 23(a) and the predominance and superiority requirements of Rule

---

[1] GREP Atlantic stipulated it's the sole Greystar entity that provided property management services for properties in Massachusetts during the relevant time period. *See* ECF No. 11 ¶¶ 2-3.

[2] Throughout this brief,"" "Legal Fees" are defined as any attorneys' fees and court costs Greystar invoices a tenant when seeking to evict.

1

23(b)(3) are satisfied, and Rule 23(b)(2) is independently met and the class should be certified.

Therefore, Plaintiffs respectfully move to certify the following class:

> All persons who, from November 29, 2019 through the date this Court enters an order on class certification, were tenants of a residential rental property in Massachusetts managed by Greystar and were charged and paid Legal Fees Greystar posted to a tenant's ledger that were not awarded by a court. Excluded are any persons, and any charges, to the extent the fees or costs were the subject of an agreement for judgment in which the person agreed to pay them.[3]

## II. FACTUAL BACKGROUND

### D. Greystar operates Massachusetts apartment complexes under a single, uniform structure, and each Massachusetts tenant signs the same form lease.

Greystar manages its Massachusetts residential rental properties through a uniform corporate structure. See Exhibit A at 14:16-15:9; 15:17-16:7. Its properties use one of three property management software systems and, regardless of software, the systems have the same functionality. ECF No. 11 ¶¶ 2-3. *Id.* 19:3-7; 27:15-19; 41:3-8; 42:7-11. All tenants sign templated versions of the National Apartment Association ("NAA") form lease containing the same language. (*Id*. at Dep. 78:12-18.[4] Greystar's claimed contractual right to assess attorney's fees and court costs against tenant's lease. *See id.* 108:3-109:8 (confirming lease is the sole source of Greystar's claimed right to charge fees).

---

[3] The class definition proposed is refined from that pleaded in the Amended Complaint (ECF No. 13 ¶ 50) to (i) reach all attorney's fees and court costs (rather than only "Eviction or Legal Recovery" fees) and (ii) expressly exclude tenants who signed an agreement for judgment agreeing to pay both attorney's fees and court costs. See *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013) (district court has "many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses"); Bartok, 2026 U.S. Dist. LEXIS 7345, at *32-34.

[4] On June 5, 2026, approximately three weeks after discovery closed, Greystar's 30(b)(6) witness submitted an errata sheet materially contradicting this sworn testimony. *See* Exhibit C. The Court should disregard these after-the-fact revisions. First, the sham-affidavit doctrine applies with full force to substantive errata-sheet revisions because the First Circuit has held that "when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994) ("when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); *accord Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000). This brief relies on Greystar's original testimony.

**E. Greystar charges tenants attorney's fees and court costs based on receipt of invoices.**

Greystar's Standard Operating Procedure ("SOP") 2130, which applies to every Greystar managed property (*id.* at 33:15-21; 36: 16-17),, titled "Eviction," directs employees to "[a]dd the eviction proceedings filing fee to the balance owed by the resident(s) against whom the proceedings are being filed" and once eviction has been initiated, the policy is to "[o]nly accept full balance in certified funds, including rent, late fees, legal fees, etc." **See Exhibit H ¶¶ 7-8.** After Greystar's eviction counsel submits an invoice, Greystar enters the Legal Fees on the ledger under a limited set of category codes. *Id.* 43:5-7; 58:1-6.[5] Greystar's timing and posting of these Legal Fees bears no relationship to the status of the underlying court proceeding and Greystar immediately charges tenants upon receipt of invoices. . (*Id.* 92:20-24; 94:14-20; 101:4-7; 103:8-14. Once a charge is posted to a ledger, Greystar treats the money as owed. *Id.* 62:14-24;64:19-23, 66:5-24; 67:1-2 Greystar's SOP is to collect outstanding Fees first, so any payment received after Legal Fees are assessed is applied to Legal Fees before rent. (*Id.* 34:10-20; see also Exhibit H ¶ 8).

Greystar maintains a complete electronic record of every Legal Fee assessed and every payment across all of Greystar's property-management software platforms. (Exhibit A 64:14; 65:2, 5-6.) The underlying itemized invoices, including those generated by counsel and by constables, are stored electronically. (*Id.* 25:9-18; 26:21-24; 106:7-10.)

**F. Plaintiffs are model class members.**

After serving Plaintiffs with a templated Notice to Quit for non-payment of rent on December 9, 2022, Greystar filed an eviction in Housing Court (Eastern Division) on January 17,

---

[5] Although miscellaneous and damages are theoretically available codes, Greystar's designee could not identify any Massachusetts property that has used either code for attorney's fees. (*Id.* 43:11-12, 18; 44:20-45:6.)

2023. ((ECF No. 13 ¶¶ 6-7, 16.) **Exhibit M** at 1.) While that was pending, Greystar assessed three separate "Eviction/Legal Recovery — Cordeiro" charges directly to Plaintiffs' ledger: $477.00 on March 20, 2023; $175.00 on May 1, 2023; and $175.00 on August 24, 2023 (the last reversed "per attorney"). **See Exhibit D** at GREP-000132-39. The eviction was voluntarily dismissed on May 23, 2023; no court ever ordered Plaintiffs to pay Greystar's Legal Fees, yet Plaintiffs paid these fees. (ECF No. 13 ¶ 31-35.) After Plaintiffs sent a Chapter 93A demand on October 24, 2023, Greystar applied a $490.00 "Legal fee credit" to the ledger on December 31, 2023 (Exhibit D at GREP-000139) but continued to defend their right to charge Legal Fees. (ECF No. 13 ¶¶ 38-40.) The net charge Greystar retained and that no court ever ordered was $652.

### III. LEGAL STANDARD FOR CLASS CERTIFICATION

To certify a class, plaintiffs must satisfy each of the four requirements of Rule 23(a) of numerosity, commonality, typicality, and adequacy and one of the alternatives in Rule 23(b). *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). In conducting the analysis, a court "may look behind the pleadings, predict how specific issues will become relevant to facts in dispute and conduct a merits inquiry only to the extent that the merits overlap with the Rule 23 criteria." *Bartok v. Hometown Am., LLC*, No. 23-cv-13074, 2026 U.S. Dist. LEXIS 7345, at *3 (D. Mass. Jan. 8, 2026) (Sorokin, J.); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008). But Rule 23 "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up). A "rigorous analysis" may "entail some overlap with the merits," but merits are not decided at this stage. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)

### IV. ARGUMENT

4

C. **Massachusetts Public Policy Strongly Favors Class Certification for Consumer Claims Under Chapter 93A.**

While this Court applies Federal Rule of Civil Procedure 23 to govern class certification, the Massachusetts Supreme Judicial Court emphasized that the requirements for class certification under Chapter 93A "are easier to satisfy than under Mass. R. Civ. P. 23," as they purposefully omit strict predominance and superiority requirements to ensure that traditional technicalities do not "impede the accomplishment of substantial justice." *Blake v. Hometown Am. Cmtys., Inc.*, 486 Mass. 268, 279 n.9, 281  (2020). (noting class certification requirements under Chapter 93A 'are easier to satisfy than under Mass. R. Civ. P. 23'); *Feeney*, 454 Mass. at 201 (quoting *Fletcher*, 394 Mass. at 605). When evaluating class certification for Chapter 93A claims, courts are instructed to bear in mind that the statute was designed to meet a "pressing need for an effective private remedy" for consumers, *Fletcher v. Cape Cod Gas Co.*, 394 Mass. 595, 605 (1985), because "the public policy of the Commonwealth strongly favors G.L. c. 93A class actions." *Feeney v. Dell Inc.*, 454 Mass. 192, 200 (2009) First Circuit's interpretation of Rule 23 mirrors Massachusetts policy because "[t]he core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Smilow*, 323 F.3d at 41 (1st Cir. 2003).

Here, Plaintiffs' motion for class certification is a matter that Massachusetts public policy and Rule 23(b)(3) were designed to address based upon Greystar's systematic practice of using a standardized procedure to unlawfully assess Legal Fees to tenant ledgers without judicial approval or safeguards. Certifying Plaintiffs' class is essential to achieving the substantial justice and deterrence that Chapter 93A demands. *See, e.g., Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246, 266 (D. Mass. 2019) (certifying classes of tenants challenging systemic utility outages under Chapter 93A); *Perry v. Equity Residential Mgmt., L.L.C.*, 2014 WL 4198850, at *4

5

(D. Mass. Aug. 26, 2014) (certifying subclasses of tenants challenging a uniform assessment of unlawful community, amenity, and application fees).

D. **Greystar's Records Readily Identify the Class and the Class Is Administratively Feasible**

Although ascertainability is not mentioned in Rule 23, it is an implicit prerequisite to determine if the class definition is "definite" and capable of being resolved by reference to "objective criteria". *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015); *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012). The test is not whether every class member can be named today, *Tassinari v. Salvation Army*, 349 F.R.D. 10, 31 (D. Mass. 2025) (Sorokin, J.), but whether the class can be determined by objective factors to allow the Court to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment". *Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 370 (D. Mass. 2019).

i.    *The Class is Defined by Objective Records*

Plaintiffs' proposed class definition is defined by three objective criteria based on Greystar's records: (1) the tenant was charged Legal Fees; (2) the tenant paid those fees; and (3) the Legal Fees were not the subject of a court order or an agreement for judgment. Each of these criteria turns on an objective record in Greystar's systems. Greystar's Rule 30(b)(6) designee confirmed that ledgers reflect every charge and every payment by date, and that the underlying invoices itemize the nature of the fees. (30(b)(6) Dep. 64:19-65:5); (*id.* 25:9-18; 26:21-24; 106:7-10)).Greystar already produced a spreadsheet dating and quantifying every such fee and any payment available in its own property management software and its witness conceded the identical data exists at the properties. See **Exhibit I**, Bates Nos. GREP-008155 (Yardi); **Exhibit J**, GREP-008156 (OneSite); **Exhibit K**, GREP-008157 (Entrata); **Exhibit E** at 157:3-4; **Exhibit F**, Ex. 10, Defs.' Resps. to Pls.' First Set of Interrogs., Resp. to Interrog. No. 2 & Ex. A thereto.

6

### ii.    *Greystar Cannot Weaponize Their Own Record-Keeping Limitations to Defeat Ascertainability.*

The Federal Rules "expressly contemplate that 'reasonable effort' may be required to identify . . . class members." *Powers v. Receivables Performance Mgmt., LLC*, 801 F. Supp. 3d 17, 36, 39 (D. Mass. 2025) (Guzman, J.), 2025 WL 3719717, at *6 (*quoting* Fed. R. Civ. P. 23(c)(2)(B)). Thus "[a] defendant's failure to maintain adequate records is not a legitimate basis for denying certification." *Thrower v. Citizens Disability, LLC*, No. 20-10285-GAO, 2022 WL 3754737, at *2 (D. Mass. Aug. 30, 2022); *accord Powers*, 801 F. Supp. 3d at 39. Otherwise, a defendant could "violate [consumer protection regulations] on a mass scale and keep no records [. . . to] avoid legal responsibility for [. . .] its illegal conduct." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), *quoted in Powers*, 801 F. Supp. 3d at 39. Furthermore, administrative burdens placed on a defendant to review its own files do not render a class unascertainable**.** *See Tardiff v. Knox Cnty.*, 365 F.3d 1, 6-7 (1st Cir. 2004) (affirming class certification despite administrative burdens of reviewing thousands of records to identify class members). Greystar cannot manage Massachusetts apartments under a uniform corporate structure, post legal fees to tenant ledgers using identical category codes, and then attempt to defeat certification merely due to minimal variances in their record-keeping across properties. Holding otherwise would create an incentive for corporate landlords to violate consumer protection laws on a mass scale and compartmentalize their records to avoid legal responsibility.

### iii.    *Identifying Exceptions Using Public Dockets is a Standard Administrative Task.*

Finally, carving-out tenants who signed an agreement for judgment or were subject to a court order does not defeat ascertainability. The First Circuit recognizes that the need to weed out uninjured members does not defeat certification if the proposed mechanism is administratively

7

sound. *See in re Asacol Antitrust Litig.*, 907 F.3d 42, 52-53 (1st Cir. 2018) (a class may be certified notwithstanding the need to adjudicate individual issues "so long as the proposed adjudication will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'"). Checking public Housing Court dockets against tenant ledgers is exactly the type of process the First Circuit permits to establish class membership. *See Smilow*, 323 F.3d at 40 ("individualized factual determinations do not create inefficiency or unfairness if they can be made pursuant to rote, mechanical processes"). Agreements for judgment and court orders in Massachusetts summary process actions are filed with the Housing Court and reflected on public dockets. Because these dockets are searchable by tenant and landlord, identifying the excluded charges is an objective, record-based review and not an unmanageable merits inquiry. *See Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 204-05 (D.R.I. 2021) (membership determinable from documents or datasets); *Bartok*, 2026 U.S. Dist. LEXIS 7345, at \*36 (class ascertainable where defendants produced rent ledgers identifying tenants and payments). Thus, Plaintiffs' proposed class is administratively feasible to determine.

E.    **The proposed class satisfies the four requirements of Rule 23(a).**

To obtain class certification, Plaintiffs must next demonstrate the proposed class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class". *See also Smilow*, 323 F.3d at 38 (1st Cir. 2003). As demonstrated below, Plaintiffs satisfy all four prerequisites.

i.    *Numerosity. Greystar's Records Confirm Thousands of Tenants Were Assessed Legal Fees.*

8

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." Courts "generally find the numerosity requirement satisfied if the proposed class exceeds forty members." *Bartok*, 2026 U.S. Dist. *LEXIS 7345, at \*5 (citing Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 392 (D. Mass. 2024)); *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Greystar produced spreadsheets showing that more than 2,000 distinct Massachusetts residents were charged and paid legal fees across more than 70 properties. *See Exhibits __* Casteel Dep. at 165:20–166:13 (confirming GREP-008155, -008156, and -008157 collectively reflect "legal fees that were charged to tenants on all three spreadsheets"); *id.* at 187:1–5 (no reason to dispute the data produced).) Thus, numerosity is satisfied. See *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).

### ii.    *Commonality. Greystar's Admitted, Uniform Fee-Charging Policy Establishes Commonality.*

Rule 23(a)(2) requires "questions of law or fact common to the class" and is a "low bar because a single common legal or factual issue can suffice." *Bartok*, 2026 U.S. Dist. LEXIS 7345, at \*5 (quoting *Mantha*, 347 F.R.D. at 393); accord *Wal-Mart*, 564 U.S. at 359 ("even a single common question will do") (cleaned up). The test is whether the class proceeding has the "capacity" to "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. This case is built on Greystar's common practice of charging tenants Legal Fees before any court ordered them to be paid.

Common questions include: Whether Greystar's practice of charging Legal Fees to tenants' ledgers before any court awarded such fees violates M.G.L. c. 93A, §§ 2 and 9; Whether Greystar had any contractual or statutory right to charge such fees prior to a court order and Massachusetts debt-collection regulations, 940 C.M.R. § 7.07; Whether the form-lease provision purporting to

9

authorize pre-judgment fee-shifting is enforceable in light of M.G.L. c. 186, § 20; Massachusetts public policy, and the regulatory framework governing landlord-tenant relations; Whether Greystar's practice gives rise to a declaratory judgment; and Whether Plaintiffs and the class are entitled to actual damages, statutory damages, treble damages, and attorney's fees under M.G.L. c. 93A, § 9. Each of these questions will "be answered either 'yes' or 'no' for the entire class; the answers will not vary by individual class member." *Tassinari*, 349 F.R.D. at 26 *(quoting Donovan v. Philip Morris USA, Inc.*, 2012 U.S. Dist. LEXIS 37974, at *21 (D. Mass. Mar. 21, 2012)). The existence of Greystar's policy is itself "a common factual contention capable of classwide resolution" because Greystar admitted that policy in a system-wide SOP directing employees to add eviction-related charges to the resident's ledger upon initiation of the eviction. (Exhibit H ¶ 7.) Greystar's Rule 30(b)(6) designee confirmed the SOP applies to all Greystar properties in her testimony. (Exhibit A at 33:15-21; 36: 16-17.) This is precisely the kind of case *Wal-Mart* contemplated as appropriate for class treatment because Plaintiffs can point to a single, admitted, mechanical practice that operates identically across every putative class member. See *Sheet Metal Workers*, 540 F. Supp. 3d at 199-200 (existence of singular fraudulent scheme satisfied commonality). Thus, commonality is satisfied.

### iii.     *Typicality. Plaintiffs' Claims Arise from the Exact Same Form Lease and Uniform Policy as the Absent Class Members.*

Typicality requires the named plaintiff's claims "arise from the same events or course of conduct as the class's injuries" and be "based on the same legal theory." *Bartok*, 2026 U.S. Dist. LEXIS 7345, at *6 (quoting *Mantha*, 347 F.R.D. at 393); *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015). The analysis "tends to merge with" commonality. *Tassinari*, 349 F.R.D. at 27 (cleaned up). Here, Plaintiffs leased an apartment under the NAA lease; were charged Legal Fees upon Greystar's receipt of an invoice; paid those fees in the absence

of any court order awarding them; and did not sign an agreement for judgment. Plaintiffs' theory of liability that Greystar's uniform practice violates Chapter 93A and warrants declaratory relief is the same theory for every class member's claim. See *Tassinari*, 349 F.R.D. at 27 (typicality satisfied where defendant's challenged practice was applied uniformly); *Perry v. Equity Residential Mgmt., L.L.C.*, No. 12-10779-RWZ, 2014 WL 4198850, at *5 (D. Mass. Aug. 26, 2014) (typicality met where named plaintiffs subjected to same fee practice as class). Plaintiffs are not subject to any "unique defenses" that threatens to become the focus of the litigation. See *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). To the extent Greystar asserts defenses such as voluntary payment, knowledge, or contractual authorization, those defenses (if viable at all) would apply across the class because the lease language and charging practice are uniform. "If a defendant mounts a defense general across the whole class, that defense will not render the class representative's situation atypical [. . . ]." *Bartok*, 2026 U.S. Dist. LEXIS 7345, at *11 (quoting 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:45 (6th ed.)). Any partial credit does not extinguish Plaintiffs' claim because Plaintiffs paid more than they were credited, were nonetheless harmed by the unlawful practice, and remain entitled to declaratory and statutory relief. *See* ECF No. 29 at 4-5 (rejecting mootness defense); *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 824 (2014) ("To the extent that a plaintiff already has received compensation for its underlying loss prior to the resolution of its G. L. c. 93A claim, such compensation has been treated as an offset against any damages ultimately awarded, rather than as a bar to recovery."); *Gammella v. P.F. Chang's China Bistro, Inc.*, 482 Mass. 1, 19-20 (2019) (rejecting attempt to moot a case by tendering full relief to the named plaintiff); *South Orange Chiropractic Center, LLC v. Cayan LLC*, No. 15-13069-PBS, 2016 WL 1441791, at *7

11

(D. Mass. Apr. 12, 2016); *Friendly Fruit, Inc. v. Sodexho, Inc.*, 529 F. Supp. 2d 158, 166 (D. Mass. 2007).

        **iv.**    ***Adequacy. Plaintiffs and their counsel will fairly and adequately protect the interests of the class.***

Rule 23(a)(4) requires representatives "fairly and adequately protect the interests of the class." The First Circuit applies a two-part test: (1) the absence of a fundamental conflict of interest between the named plaintiffs and the class, and (2) the qualification and willingness of class counsel to vigorously prosecute the action. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros*, 699 F.3d at 138 (internal quotation removed). Plaintiffs share with every class member a determination that Greystar's fee-charging practice is unlawful and a recovery of the unlawful charges. See **Exhibit B** Dep. Of Shaun Cordeiro at 28:5–9 (testifying he filed this lawsuit because he was "charged legal eviction fees without court ruling" and "found that to be unfair"); *id.* at 29:1–4 (describing the class as everyone "charged these fees without . . . a court order"); See **Exhibit G**, Dep. of Kevin Matlack at 26:8–14 (same); *id.* at 28:11–13 (identifying the class as "present and past Massachusetts tenants . . . who had been assessed legal recovery and eviction fees"). Plaintiffs have actively prosecuted this case by responding to Greystar's motion to dismiss, participating in discovery, attending multiple depositions, and pursuing both individual relief and relief for the class. Dep. of Shaun Cordeiro at 230:7–14 ("I am not seeking damages for me personally. I'm seeking damages for the entire group of people that have gone through this similar situation . . . . This isn't about me."); Dep. of Kevin Matlack at 166:4–7 ("The commonality of the class is the harm done by the unfair and non-judicial assessment of legal and recovery fees, not any monies owing or not to Greystar at time of move out."). There is no "intra-class conflict" of

12

any kind, let alone one "so substantial as to overbalance the common interests of the class members as a whole." *Matamoros*, 699 F.3d at 138. Also, proposed class counsel Bryson Harris Suciu & DeMay, PLLC; Maginnis Howard; the Legal Services Center of Harvard Law School; and Greater Boston Legal Services bring a combination of consumer-protection class-action experience and Massachusetts landlord-tenant expertise to the prosecution of this case. **See Exhibit L.**

F.  **Rule 23(b)(3) is Satisfied Because Defendants' Uniform Policies Predominate Over Any Individualized Inquiries.**

Rule 23(b)(3)'s predominance inquiry asks whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance is satisfied where "one or more of the central issues are common to the class and can be said to predominate, even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up); accord *Bartok*, 2026 U.S. Dist. LEXIS 7345, at *20. Although predominance is "far more demanding" than commonality, *In re New Motor Vehicles*, 522 F.3d at 20, it is satisfied here because the central issue is whether Greystar engaged in a uniform fee-charging practice; whether that practice violated Chapter 93A; whether the form lease purported to authorize it; and whether such pre-judgment fee-shifting is contrary to Massachusetts law are all common to the class and will be resolved on the same evidence as to every member. See *Amgen*, 568 U.S. at 469-70 (predominance satisfied where the common question is "susceptible to common proof" and a failure of proof on it would defeat every class member's claim equally); *Tassinari*, 349 F.R.D. at 28. Since Greystar's purported right to assess Legal Fees arises solely from the NAA lease, the legality of this practice can be resolved in one stroke for the entire class. *See Smilow*, 323 F.3d at 39 (predominance satisfied where a "common factual basis is found in the terms of the contract, which are identical for all class

13

members"); *Weld v. Glaxo Wellcome Inc.*, 434 Mass. 81, 91 (2001) (class certification appropriate where "every contract created largely identical contractual obligations" administered in a similar manner). Greystar operates under a "uniform and systematic scheme" based on standard lease provisions, so common questions regarding liability inherently predominate over any individualized inquiries. *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 366 (2008). Because this practice was applied systemically to the entire class, class-wide resolution is uniquely appropriate.

### i. *Individualized issues do not predominate.*

Greystar may argue individualized issues should defeat predominance, yet, the First Circuit has held a court should not rely on "mere speculation that individual issues may arise to defeat class certification." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021); accord *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (court "will not allow arguments woven entirely out of gossamer strands of speculation and surmise to tip the decisional scales in a class certification ruling"). Furthermore, Greystar cannot defeat predominance by conjuring hypothetical scenarios because a court may not deny class certification upon "mere speculation that individual issues may arise." *Powers v. Receivables Performance Mgmt., LLC*, No. 21-cv-12108-MRG, 2025 WL 3719717, at *12 (D. Mass. Sept. 25, 2025). Here, after reviewing the SOP, Greystar's own Rule 30(b)(6) designee confirmed that the process of posting a lawyer's invoice to a tenant's ledger is uniform across Greystar properties and could not provide any evidence that there may be differences. (Exhibit A 55:16-56:5; 59: 10-17.) A defendant's right to contest particular class members at trial does not defeat certification, especially where the class already excludes tenants with a materially different posture. *See Asacol*, 907 F.3d at 53 (certification proper where "a very small absolute number of class members might be picked off in a manageable, individualized process at or before trial"); *Sheet Metal Workers*,

14

540 F. Supp. 3d at 210 (a "need to assess individual circumstances" "does not alone foreclose class certification"). Any residual timing concerns are manageable through the Court's "many tools," including adjusting the class period or creating subclasses. *Manning*, 725 F.3d at 60; *Bartok*, 2026 U.S. Dist. LEXIS 7345, at *32-34. [6]

### ii.    *Damages can be determined on a class-wide basis from Greystar's records.*

The black-letter rule is that the need for individual damage calculations does not defeat predominance. *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) ("[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)"); *accord Bartok*, 2026 U.S. Dist. LEXIS 7345, at *18 (D. Mass. 2026). In any event, damages here do not require individualized inquiry because they are readily calculable on a class-wide basis using Greystar's records. Each class member's actual damages equal the exact amount of attorney's fees and court costs charged to and paid by that tenant, and Greystar's ledgers track the exact date and amount of every charge and payment. (Exhibit A Dep.55:16-56:5). Indeed, Greystar's own class-wide production (Exhibits I-K, GREP-008155, -008156, and -008157) already aggregates these line items on a per-resident basis. This is the precise "damages by formula" approach routinely approved by the First Circuit. *See Tardiff v. Knox Cnty.*, 365 F.3d 1, 6-7 (1st Cir. 2004); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (damages calculations

---

[6] Greystar may attempt to argue that some class members have arbitration clauses, but Greystar waived any right to arbitrate by litigating as though none existed. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). Greystar answered without pleading arbitration, moved to dismiss on the merits, served and answered written discovery, produced documents, and presented two Rule 30(b)(6) witnesses — raising arbitration only at the close of discovery. That conduct forfeits the right. Regardless, arbitration agreements signed by a subset of tenants do not bear on the common questions — the legality of Greystar's uniform fee-charging practice and the framework purportedly authorizing it. An arbitration agreement is at most an individualized weed-out identifiable from Greystar's own leasing files; like the agreement-for-judgment carve-out and the voluntary-payment defense, filtering a defined subset through objective records does not convert predominant common questions into individual ones. *See Asacol*, 907 F.3d at 53; *Mowbray*, 208 F.3d at 298. See also *Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769 (E.D. Cal. 2012) (the possibility that a defendant may seek to compel arbitration against individual class members does not predominate over the many common issues necessary to determine liability).

"need not be exact" but must simply be "consistent with" the liability theory). Furthermore, the First Circuit reaffirmed that a defendant's standardized electronic records can effectively serve as "common proof" of a Chapter 93A injury for the entire class, thereby ensuring common questions predominate. *See Nightingale v. Nat'l Grid USA Serv. Co.*, 107 F.4th 1, 9-10 (1st Cir. 2024). Even if some marginal charge later turns out to be miscoded on Greystar's ledgers, that is a damages-allocation question resolved on the same objective records: the invoices, which Greystar admits are stored electronically. (Greystar 30(b)(6) Dep. 25:9-18-; 26:19-27:5-9; 106:7-21.) That cross-reference is the same "reasonable and workable plan" *Nexium* and *Asacol* require and the same "reasonable effort" Rule 23(c)(2)(B) and *Powers* contemplate. See *Powers, 801 F. Supp. 3d at *39*.

### iii.    *The class definition itself ensures that the class consists of injured persons.*

The First Circuit permits class certification "even if the class includes a de minimis number of uninjured parties." *In re Nexium*, 777 F.3d at 14. Here, the class definition is constructed to ensure that every member sustained the precise injury alleged: each member (i) was charged Legal Fees by Greystar, (ii) actually paid those Legal Fees, and (iii) was not subject to a court order or an agreement for judgment in which they agreed to pay legal fees. Every class member transferred money to Greystar for Legal Fees that no court authorized; this is an injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The carve-out for tenants who were subject to court orders or signed agreements for judgment is the precise "reasonable and workable plan" for excluding any individuals with materially different claims that *Nexium* and *Asacol* require. *See Asacol*, 907 F.3d at 58. And Greystar confirmed that attorney invoices distinguish on their face between attorney's fees and the hard costs of court filing and service, permitting Greystar to identify by

16

record review the categories of charges paid by each putative class member. (Greystar 30(b)(6) Dep. 106:7-15.)

G. **<u>Superiority. A class action is the superior method for fairly and efficiently adjudicating these claims.</u>**

Rule 23(b)(3) requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The factors include the class members' interest in individual control, the extent of any pending litigation, the desirability of concentrating the litigation in the chosen forum, and manageability. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each factor favors certification. The individual claims here measured in, on average, hundreds of dollars per tenant are far too small to support individual litigation. As the Supreme Court observed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); accord *Gintis*, 596 F.3d at 68. Most tenants lack the resources to retain counsel for a $652 claim; there is no other pending litigation, and concentrating these claims in this forum promotes judicial economy. And the case is manageable: liability turns on a common practice admitted in 30(b)(6) testimony, and damages can be computed from Greystar's data. Recognizing this dynamic, courts across Massachusetts routinely certify classes of residential tenants challenging uniformly assessed, unlawful fees by corporate landlords. *See, e.g., Perry,* 2014 WL 4198850, at *4 (D. Mass. Aug. 26, 2014) (certifying subclasses of tenants challenging a landlord's uniform fee practices); *Hermida v. Archstone*, 826 F. Supp. 2d 380, 386 (D. Mass. 2011) (certifying and ruling in favor of a class of tenants challenging unlawful amenity fees).

Finally, to the extent Greystar identifies any unforeseen manageability issues during the litigation, the Court is well-equipped to handle them without outright denying certification. As the

17

First Circuit has noted, "the district court has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses." *Manning*, 725 F.3d at 60; see also *Perry,* 2014 WL 4198850, at \*7 (creating subclasses to manage distinct fees in a class action). Accordingly, the superiority requirement is met.

H. **In the alternative, the Court should certify an injunctive class under Rule 23(b)(2).**

If the Court has any reservation about certification under Rule 23(b)(3), it should certify the class under Rule 23(b)(2) for purposes of the declaratory and injunctive relief sought in Count IV. Rule 23(b)(2) authorizes certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This is "a prime example" of a Rule 23(b)(2) case: Greystar maintains a "systemic policy or practice" of charging attorney's fees without court authorization, and they continue to defend their right to do so. Plaintiffs seek a declaration that the practice is unlawful relief that resolves a present, concrete controversy over charges Defendants have already imposed and collected, and that applies with equal force to every class member. See *Tassinari*, 349 F.R.D. at 23. Because that declaration redresses money already taken under an admittedly uniform practice, the class's standing to obtain it is not in doubt. See *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). The declaratory relief Cordeiro and Matlack seek does not depend on future exposure: it resolves an actual, present controversy over the lawfulness of charges already imposed, see *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and Greystar cannot defeat that controversy by crediting one tenant's ledger while continuing to defend the practice as to everyone else. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Plaintiffs' damages

18

claims remain in Rule 23(b)(3); they do not seek to recover monetary relief through the (b)(2) class. See *Wal-Mart*, 564 U.S. at 360-61. Certification under Rule 23(b)(2) does not require predominance or ascertainability. *Tassinari*, 349 F.R.D. *at 32 n.17 (citing Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)); *Bartok*, 2026 U.S. Dist. LEXIS 7345, at *37. The numerosity, commonality, typicality, and adequacy showings made above are equally sufficient to support certification under Rule 23(b)(2). The Court should certify either (i) a Rule 23(b)(3) damages class and a Rule 23(b)(2) declaratory class or injunctive class as a hybrid, or (ii) if the Court declines (b)(3) certification, a stand-alone (b)(2) class.

## V. PROPOSED CLASS NOTICE AND APPOINTMENT OF CLASS COUNSEL

If the Court certifies the class under Rule 23(b)(3), Plaintiffs propose to provide notice consistent with Rule 23(c)(2)(B), including individual notice to all members who can be identified through reasonable effort from Defendants' records. Because Defendants' ledgers contain the names and last-known mailing addresses of every charged tenant, individual mailed notice is administratively feasible. Plaintiffs will submit a proposed notice plan within thirty (30) days of certification. Plaintiffs further request the Court appoint Bryson Harris Suciu & DeMay, PLLC; Maginnis Howard; the Legal Services Center of Harvard Law School; and Greater Boston Legal Services as Class Counsel under Rule 23(g). Together, counsel have identified and investigated the claims, prosecuted the case through dispositive motion practice, conducted Rule 30(b)(6) discovery of Greystar and committed the resources necessary to see the case through trial.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant this motion, certify the proposed class under Rule 23(b)(3) (or, alternatively, Rule 23(b)(2)), appoint Plaintiffs as Class Representatives,

19

appoint Plaintiffs' counsel as Class Counsel, and direct the parties to confer on a proposed notice

plan.

Dated: June 17, 2026.

Respectfully submitted,

*/s/ Scott C. Harris*
Scott C. Harris (BBO #714774)
BRYSON HARRIS SUCIU & DEMAY, PLLC
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@brysonpllc.com

Edward Maginnis (admitted PHV)
MAGINNIS HOWARD
7706 Six Forks Rd., Ste. 101
Raleigh, North Carolina 27615
Telephone: (919) 526-0450
emaginnis@carolinalaw.com

Sean M.F. Ahern (BBO #698446)
LEGAL SERVICES CENTER OF HARVARD LAW
SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Telephone: (617) 384-0071
sahern@law.harvard.edu

Courtney Libon (BBO #703004)
Kristen Bor-Zale (BBO #705154)
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, MA 02114
Telephone: (617) 371-1234
CLibon@gbls.org
KBorZale@gbls.org

*Counsel for Plaintiffs and the Proposed Class*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION has been electronically filed with the Clerk of Court by using the CM/ECF system, which will send notice of the filing to all parties of record.

Dated this the 17th day of June, 2026.

*/s/ Scott C. Harris*
Scott C. Harris

21