# Exhibit C

30(b)(6)  Stephanie Donlin                              April 23, 2026
Cordeiro, Shaun, Et Al. v. Grep Atlantic LLC, Et Al.

Page 123

                        SUGGESTED CORRECTIONS

RE: SHAUN CORDEIRO and KEVIN MATLOCK, individually

and on behalf of all others similarly situated vs.

GREP ATLANTIC, LLC, and EDDY OWNER, L.L.C.

WITNESS: STEPHANIE DONLIN, Vol. I

The above-named witness wishes to make the following

changes to the testimony as originally given:


PAGE   LINE       SHOULD READ            REASON
  SEE ATTACHMENT
_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

# Deposition Errata Attachment

***Shaun Cordeiro, et al. v. GREP Atlantic, LLC, et al.*,** Case No. 1:23:CV-12901-AK
**Deposition of GREP Atlantic, LLC, through its designee, Stephanie Donlin**
**Deposition taken on April 23, 2026**

**Page 12, Line 19:** I am generally familiar with GREP Atlantic, LLC (GREP)'s SOPs, but they are voluminous and I would not be able to give live testimony from memory about each and every change to dozens of SOPs without referring to the relevant documents. **Reason for Change:** Correct the record.

**Page 24, Line 17:** Legal expenses recorded in the general ledger would be based on legal invoices received, however, GREP does not have access to all historical legal invoices. For example, GREP may no longer manage assets that it previously did, and it would no longer have access to the records for assets not currently under GREP management.  For those properties still under GREP management, document retention policies may vary based on the location and client needs, and GREP may not have retained all of the underlying legal fee invoices. As I explained previously, the total amount of the legal invoices would have been sent to accounting as a line item. However, the underlying invoice may no longer be available or retrievable in all instances. **Reason for Change:** Correct the record.

**Page 39, Line 4:** I would defer to GREP's corporate representative Brandon Casteel on this issue since he was produced to testify on this topic (Topic 17 of the deposition notice). **Reason for Change:** Correct the record.

**Page 44, Lines 14-15:** Charge codes other than the ones I could recall at the deposition have been used to record attorney's fees on tenant ledgers, and many of these are included in the data worksheets provided to plaintiff counsel. For example, these include, "Eviction Fees;" "Legal Fees," "ATTRNY;" "EVICTION;" "LEGAL;" "evict;" "legal;" and "legalres." Some of these charge codes are used interchangeably for other types of charges as well, including charges for attorney's fees not related to evictions, moving costs associated with evictions, repair damages associated with evictions and other expenses chargeable to tenants. Consequently, one would not be able to determine whether a charge coded as an "eviction fee" represents a charge for an attorney fee at all. Similarly, a charge coded as "attorney fee" often represents a charge for attorney's fee for an issue that did not arise from an eviction action. More research would be required, including individually reviewing the underlying invoices, if any exist and are available. **Reason for Change:** Correct the record.

**Page 45, Line 12:** See above – there have been other charge codes used other than the ones I could recall the day of the deposition. **Reason for Change:** Correct the record.

**Page 46, Line 8-9**: This should read "Some would be restricted to just the "leased by" and attachments." **Reason for Change:** Correct the record.

**Page 46, Line 19-22**: The second sentence should read "Some software does direct invoice entry into Yardi, and some use an alternate platform." **Reason for Change:** Correct the record.

1

**Page 58, Line 9:** Tenant ledgers do not have sufficient information to determine whether they had been charged an attorney's fee, nor would the ledgers be sufficient to reliably determine whether a tenant had been charged an attorney's fee *arising from an eviction* because the codes are **too general and non-specific**. Even in circumstances when the ledger has an entry coded as "eviction fee," we would not be able to determine from that code alone whether the charge included an attorney fee, versus a moving charge or some other fee. Similarly, a charge coded as "legal fee" could be a charge for attorney's fee for some expense that did not arise from an eviction action. Also, the ledgers do not have sufficient information to determine the precise **amount,** if any, attributable specifically to attorney's fees. Charges coded as "legal fee," "eviction fee" or the like, often have multiple types of expenses consolidated into one charge, which may or may not include attorney's fees. More research would be required to determine whether a tenant had been charged an attorney's fee and the actual amount at issue, including reviewing the relevant invoices, if any exist, are available, and can be identified and linked to a specific charge. In some instances, the underlying invoices are unavailable to GREP at this time because GREP no longer manages the property, in which case the information to determine any such fees might not be available to it. **Reason for Change:** Clarification and completeness.

**Page 59, Lines 2-4:** Expenses chargeable to a specific tenant are sometimes applied to the ledger near to the time the invoice for that expense was received, however, onsite teams have discretion regarding whether to charge fees, including attorney's fees, to the tenants. Sometimes they will elect not to pass along those fees in certain scenarios. So, a fee that is itemizable to a tenant will not always be placed on the ledger in every single instance. We cannot assume that just because an invoice exists that it was applied to a ledger – it would have to be cross-referenced with the ledger at issue. Also, the amount of the invoice and the ledger charge, if any, may not match, making it difficult to determine whether the charge was based on the invoice. **Reason for Change:** Clarification.

**Page 64, Lines 6-14:** I would defer to GREP's corporate representative Brandon Casteel on this issue, since he was produced to testify on this topic (Topic 17 of the deposition notice). **Reason for Change:** Correct the record.

**Page67:9-68:2**: The information regarding "every instance in which attorney's fees were charged" and "every instance in which a payment was processed after that attorney fee was charged" would not be determinable from the ledger data alone. As clarified above in connection with my testimony on **Page 58, Line 9,** tenant ledgers do not always have sufficient information to reliably discern whether they had been charged an attorney's fee, nor would the ledgers be sufficient to determine whether any particular tenants had been charged an attorney's fee arising *from an eviction* because the ledger codes are **too general and non-specific**.

Even in circumstances when the ledger has an entry coded as "eviction fee," we would not be able to determine from that code alone whether the charge included an attorney fee, versus a moving charge or some other fee. Similarly, a charge coded as "legal fee" often reflects a charge for legal fees unrelated to eviction proceedings. Earlier in my deposition, the questioner himself, based on documents provided to plaintiff's counsel, identified one such example of a charge related to a non-eviction dispute. Also, as I mentioned in my live testimony, we would not be able to tell from

2

the ledgers alone whether a specific site was using a general or catch-all code such as "miscellaneous" to account for attorney's fees.

To the extent the ledgers contain credits, including potential credits or adjustments related to attorney's fees, in many instances the purpose of those entries cannot be determined from the ledger data alone. As a result, we cannot calculate attorney's fee charges, payments, credits from the ledgers alone. If reconstruction were attempted, it would require an individualized review of the available invoices, communications and ledger data for each individual tenant, and each individual charge, payment, and credit. In many instances such reconstruction may not be possible due to incomplete or unavailable records.
**Reason for Change:** Correct and clarify the record.

**Page 69, Line 8**: This should read: "Metlo."  **Reason for Change:** Correct the record.

**Page 84:24-85:2**: This should read "If the individual qualifies for the terms of the apartment such as rents and utilities for that particular apartment that they're applying for, yes, we do." **Reason for Change:** Correct the record.

**Page 92, Lines 15-19:** An invoice could be applied to the ledger and sent to accounting if it was a cost chargeable to a tenant, subject to discretion of the onsite team and client preferences, but in some cases those charges may not have been passed along to the tenant. **Reason for Change:** Clarify and correct the record.

**Page 101:8-13, 102:16:** There are many possible reasons for charges coded as "legal fees" and/or "eviction" that do not have to do with non-payment of rent. For example, "legal fee" charge codes have been used in connection with evictions "for cause," such as violations of lease terms and community rules. Also, many of the charges recorded as "eviction fees" do not represent attorney's fees at all but instead reflect moving costs or other expenses associated with eviction proceedings. **Reason for Change:** Clarification and completeness.

**Page106, Lines 12-15:** One could only delineate between attorney's fees and court costs if the appropriate invoice is available and could be identified. In many cases, we would not be able to do so based on the records currently available. **Reason for Change:** Additional context.

**Page 112, Lines 8-14:** Expenses chargeable to a specific tenant are sometimes applied to the ledger near to the time the invoice for that expense was received; however, onsite teams have discretion regarding whether to charge such fees, including attorney's fees, to the tenants. Therefore, itemizable fees are not always recorded on the ledger in every instance. **Reason for Change:** Clarification.

**Page 112, Lines 15-19:** In many instances we would likely no longer have sufficient records to piece together whether the entire amount of a legal invoice was charged to a tenant, or if only a portion of that invoice was passed through. **Reason for Change:** Clarification and completeness.

3

**I, Stephanie Donlin, do hereby certify that I have read the foregoing transcript of my testimony, and further certify under the pains and penalties of perjury that said transcript with the above suggested corrections is true and accurate.**

*Stephanie Donlin*
_____
Stephanie Donlin
Senior Director, Real Estate
June 5, 2026

4

30(b)(6)  Stephanie Donlin                                       April 23, 2026
Cordeiro, Shaun, Et Al. v. Grep Atlantic LLC, Et Al.

Page 122

C E R T I F I C A T E

I, STEPHANIE DONLIN, do hereby certify that I have read the foregoing transcript of my testimony, and further certify under the pains and penalties of perjury that said transcript (with/without) suggested corrections is a true and accurate record of said testimony.

Dated at Boston, MA, this 5th day of June, 2026.

_Stephanie Donlin_
_____