**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SHAUN CORDEIRO and KEVIN MATLACK, individually and on behalf of all others similarly situated, Plaintiffs, | ) | |
| v. | ) | Civil Action No. 23-CV-12901-AK |
| GREP ATLANTIC, LLC, and EDDY OWNER, L.L.C. Defendants. | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**ANGEL KELLEY, D.J.**

Plaintiffs Shaun Cordeiro and Kevin Matlack are former tenants of The Eddy, an apartment building in East Boston owned by Defendant Eddy Owner, L.L.C. ("Eddy Owner") and managed by Defendant GREP Atlantic, LLC ("Greystar"). They bring this putative class action alleging that Greystar's practice of posting eviction-related attorney's fees and litigation costs and expenses to tenants' ledgers, and collecting those charges before any court has awarded them, violates Mass. Gen. Laws ch. 93A and they seek declaratory relief. [Dkt. 13]. Before the Court is Plaintiffs' Motion for Class Certification, which seeks certification under Rule 23(b)(3) and, alternatively or as a hybrid, Rule 23(b)(2), of a class of Massachusetts tenants of Greystar-managed properties who were charged and paid such fees. [Dkts. 102 at 1; 103 at 25-26]. Defendants oppose the motion. [Dkt. 106]. For the following reasons, Plaintiffs' Motion for Class Certification [Dkt. 102] is **GRANTED**, and the Court certifies the proposed class under Rule 23(b)(3) as to Plaintiffs' claims against Greystar under Chapter 93A (Count I) and for

declaratory relief (Count IV). The Court declines to certify any class claims against Eddy Owner and denies without prejudice Plaintiffs' request for certification under Rule 23(b)(2). Further, the Court appoints Plaintiffs as Class Representatives and appoints Bryson Harris Suciu & DeMay, PLLC; Maginnis Howard; the Legal Services Center of Harvard Law School; and Greater Boston Legal Services as Class Counsel pursuant to Rule 23(g).

## I. BACKGROUND

The following facts are drawn from the parties' class certification submissions and the accompanying record, including the Rule 30(b)(6) deposition testimony of Greystar's designees, Greystar's ledger data, and the record of Plaintiffs' own tenancy and eviction. All facts are undisputed, unless noted otherwise.

### A. Greystar's Massachusetts Operations

GREP Atlantic is the sole Greystar entity that provides property management services in Massachusetts. [Dkt. 11 ¶ 3]. The properties Greystar manages are generally owned by single-purpose entities that contract with Greystar for management services. [Dkt. 103-1 at 14:16-16:7]. Eddy Owner is one such entity; it owns The Eddy, an apartment building at 10 New Street in East Boston that Greystar manages. [Dkt. 106 at 6-7 & n.1; see Dkts. 103-1 at 14:3-20; 103-13 at 2].

Greystar's properties record tenant charges and payments on one of three property management platforms: Yardi, OneSite, or Entrata. [See Dkts. 103-1 at 64:12-14; 103-5 at 182:12-183:11]. Greystar's Rule 30(b)(6) designee, Stephanie Donlin, Senior Director of Real Estate, testified that the ledgers are the same across the three platforms [Dkt. 103-1 at 64:12-14], and that each platform maintains a tenant ledger that records the date of each charge and each payment [id. at 64:19-65:6, 66:5-21], although the charge codes used on each platform differ

[Dkt. 103-5 at 183:7-22]. Greystar does not have access to data for properties whose owners license their own platforms. [Dkt. 103-5 at 156:2-24].

Massachusetts tenants at Greystar-managed properties, including Plaintiffs, generally sign a version of the National Apartment Association's Massachusetts form lease. [Dkt. 103-1 at 63:4-12, 78:12-18]. Plaintiffs' lease provides that, upon a tenant's default, the landlord may seek "reimbursement for any and all attorney's fees and/or litigation costs/expenses." [Dkt. 13 ¶ 30; see Dkt. 106 at 7 (quoting Dkt. 13-2 at 6 ¶ 29)]. The lease further provides that the tenant "shall be responsible for any and all attorney's fees, expenses, or other costs incurred by the Landlord to enforce any provision of this Lease." [Dkt. 13-2 at 6 ¶ 29]. When asked what source, other than the lease, Greystar relies on for its understanding that it may charge such fees without a court order, Donlin testified that she was not aware of any unprivileged source. [Dkt. 103-1 at 108:3-109:8].

**B. The Fee-Posting Practice**

Greystar maintains a written Standard Operating Procedure titled "Eviction" ("SOP 2130"), which Plaintiffs filed under seal. [Dkt. 103-8]. According to Plaintiffs, SOP 2130 directs property staff to add the eviction filing fee to the tenant's balance when proceedings are filed and, once an eviction has begun, to accept only payment of the full balance, including legal fees. [Dkt. 103 at 10]. Donlin testified that a separate SOP, SOP 2080, "Collecting Delinquent Monies for Current Residents," provides that payments apply to "late charges and any other outstanding fees or charges before rent, unless state law prohibits," and that the SOP is "a general practice for all of Greystar; not specific to Massachusetts." [Dkt. 103-1 at 33:22-34:20, 36:16-17].

Donlin described the general process for legal invoices as follows. When an invoice from eviction counsel arrives at a property, any charges attributable to a tenant are generally applied to

that tenant's ledger around the time the invoice is sent to accounting for payment. [Id. at 55:16-56:5, 92:15-19]. Donlin was not aware of any notation of a case's status that would affect whether an invoice is applied to the ledger [id. at 92:20-24], and invoices are applied on receipt without regard to the status of any court case [id. at 103:8-14]. Absent a mistake, once a charge is on the ledger, Greystar's position is generally that the tenant owes it. [Id. at 59:5-17]. Donlin further testified that counsel's invoices generally break out court costs from attorney's fees. [Id. at 106:7-15].

Defendants dispute that the practice is uniform. Destinee Price, the property manager at The Eddy during Plaintiffs' tenancy [see Dkt. 106 at 22 n.22], testified that the property manager had discretion whether to charge legal fees to a tenant, that fees were not charged back where legal work arose from a building issue that was not the resident's fault, and that she did not believe legal fees could be charged to tenants in affordable housing units. [Dkt. 106-1 at 76:15-77:18]. Donlin likewise testified that an onsite team "may have discretion" not to post a constable's fee. [Dkt. 103-1 at 82:9-18]. On June 5, 2026, after the close of discovery, Donlin submitted an errata sheet that revised or supplemented more than a dozen of her answers in her deposition. [Dkt. 103-3 at 3-6].

**C. Greystar's Records**

In discovery, Greystar produced three spreadsheets of ledger data, one for each platform, which Plaintiffs filed under seal. [Dkts. 103-9 to 103-11]. Plaintiffs represent that the spreadsheets show more than 2,000 Massachusetts residents at more than 70 properties who were charged and paid legal fees. [Dkt. 103 at 16].

Greystar's designee, Brandon Casteel, Manager of Property Systems Integrations, testified that a ledger entry coded "legal" could reflect charges for many purposes, including

lease-violation notices, responses to resident complaints, evictions, or the storage or removal of furniture after an eviction, and that the reason for a given charge could be determined only by reviewing the property's documents and notes for that charge. [Dkt. 103-5 at 146:13-147:20, 174:12-177:4]. He testified that the data do not reflect why a tenant made a particular payment [id. at 177:5-18], and that identifying the reason for each charge would require "an individual touch" to each entry [id. at 184:5-10]. In a declaration submitted with Defendants' opposition, Casteel states that twenty-six individuals who lived at The Eddy during the proposed class period had a charge coded "Eviction/Legal Recovery" in the OneSite data set, and that Matlack is not among them. [Dkt. 106-11 ¶ 4].

**D. Plaintiffs' Tenancy and Eviction**

Plaintiffs Shaun Cordeiro and Kevin Matlack leased Unit 1010 at The Eddy beginning on September 12, 2022, from GEGC 2 New Street, LLC ("GEGC"), Eddy Owner's predecessor in interest. [Dkts. 13 ¶ 29; 29 at 1; see Dkt. 106-3 at 3]. On January 10, 2023, ownership of The Eddy transferred from GEGC to Eddy Owner. [Dkt. 121 at 15]. On January 17, 2023, Greystar Management Services, L.P. and GEGC filed a summary process eviction action against Cordeiro and Matlack in the Eastern Division of the Housing Court. [Dkts. 106-13 at 2-3; 13 ¶ 31]. Cordeiro and Matlack appeared pro se. [Dkt. 106-13 at 2-3]. On May 12, 2023, Cordeiro and Matlack moved for leave to file a late answer and counterclaims. [Id. at 4, 6-11].

Greystar's eviction counsel sent Greystar four invoices for the matter: $477 on March 8, 2023, consisting of $315 in attorney time and $162 in filing, summons, and e-filing fees; $175 on April 14, 2023, for the March 23 conference; $140 on August 9, 2023, for the voluntary dismissal; and $175 on August 22, 2023, for the May 15 hearing. [Dkt. 106-6 at 2-5]. While the eviction action was pending, Greystar posted two charges labeled "Eviction/Legal Recovery –

Cordeiro" to Plaintiffs' ledger: $477 on March 20, 2023, and $175 on May 1, 2023. [Dkts. 103-4 at 6; 106-7 at 6].

On May 19, 2023, after learning that the eviction would be dismissed but the legal fees would remain on the ledger, Cordeiro asked Greystar's counsel why. [Dkt. 106-10 at 2]. Counsel responded, "my client's position is that they had to spend legal fees to bring you to court for nonpayment of rent and they can recover the legal fees under your lease agreement. If they wanted to do so, they would have to obtain a judgment at a later date in a different action." [Id.]. The next day, Cordeiro wrote: "To be clear, we're talking about the $652, correct? Once I pay that, Greystar and I start at $0." [Id. at 4]. Counsel replied, "That's all I see on the account that my client sent over and confirmed." [Id.]. Cordeiro testified that a Greystar employee told him that Plaintiffs had to pay the eviction-related fees for the case to be dropped. [Dkt. 103-2 at 159:9-12]. The eviction was voluntarily dismissed on May 23, 2023. [Dkts. 106-13 at 4-5; 13 ¶ 39]. In May 2023, Cordeiro made payments which brought the ledger balance from $652 to zero. [Dkt. 106-7 at 6-7].

Plaintiffs sent a Chapter 93A demand letter on October 24, 2023. [Dkts. 13 ¶ 73; 103 at 11]. On December 31, 2023, Greystar applied a $490 "Legal fee credit" to Plaintiffs' ledger. [Dkts. 103-4 at 9; 106-2 at 7].

Plaintiffs' tenancy ended on March 12, 2024. [Dkt. 106-3 at 3]. Greystar's April 11, 2024, final account statement showed a balance due of $5,142.65 after application of the security deposit and stated that "a legal fee credit of $162 has also been applied to your Ledger Account." [Id. at 2-3]. It further stated that the balance "does not include, and [Greystar is] not seeking to recover, the costs associated with the eviction action arising from your tenancy." [Id. at 2]. The parties dispute whether Plaintiffs were made whole. Plaintiffs maintain that Greystar retained

$652 in fees that no court ordered [Dkt. 103 at 11], while Defendants contend, and the Court previously noted, that the $490 and $162 credits returned the full amount [Dkts. 29 at 2; 106 at 8, 15 n.11]. The credits correspond to counsel's invoices: the $490 credit equals the $315 and $175 in attorney time billed on the March and April 2023 invoices, and the $162 credit equals the filing, summons, and e-filing fees billed on the March invoice. [Compare Dkt. 106-6 at 2-3, with Dkts. 103-4 at 9; 106-3 at 2].

**E. Procedural History**

Plaintiffs filed this putative class action on November 29, 2023, against several Greystar entities and GEGC. [Dkt. 1; see Dkt. 11 ¶¶ 2-3]. On January 16, 2024, the parties stipulated that GREP Atlantic was the proper Greystar defendant, and Plaintiffs dismissed the other Greystar entities without prejudice. [Dkt. 11 ¶¶ 1-3, 8]. Plaintiffs filed an Amended Complaint against Greystar and Eddy Owner on January 26, 2024, asserting violations of Chapter 93A (Count I), unjust enrichment (Count II), negligent misrepresentation (Count III), and a claim for declaratory relief (Count IV). [Dkt. 13] [1]. Relevant here, the Amended Complaint alleges that the challenged practice violates the Attorney General's debt collection regulations, 940 C.M.R. § 7.07(8), (16), and Mass. Gen. Laws ch. 93, § 49, and that those violations constitute Chapter 93A violations. [Id. ¶¶ 67-68].

Defendants moved to dismiss. [Dkt. 16]. On March 21, 2025, the Court dismissed Counts II and III and denied the motion as to Counts I and IV. [Dkt. 29 at 1]. As relevant to the present controversy, in its Order, the Court observed that Mass. Gen. Laws ch. 186, § 11 "seemingly contemplates the award of 'costs of suit' necessarily before any type of court order,"

[1] The Amended Complaint captions this claim as "Count VI." [Dkt. 13 at 15]. The Court refers to it as Count IV, consistent with its prior order. [Dkt. 29 at 8-9].

but concluded that Section 11 did not categorically govern because Plaintiffs' eviction was not resolved within the statutory cure period. [Id. at 6].

Defendants answered on April 4, 2025, asserting twenty-five affirmative defenses and a counterclaim against Cordeiro and Matlack for the unpaid balance at the end of their tenancy. [Dkt. 31; see Dkt. 66 at 1]. The Court later denied Plaintiffs' Motion to Dismiss the counterclaim. [Dkt. 66 at 4-7]. On June 17, 2026, Plaintiffs moved to certify the class. [Dkt. 102]. Defendants opposed [Dkt. 106], and Plaintiffs replied [Dkt. 118]. The parties' cross-motions for summary judgment and Eddy Owner's Motion for Summary Judgment on the counterclaim remain pending. [Dkts. 96, 99, 108].

### F. The Proposed Class

Plaintiffs seek certification of the following class:

> All persons who, from November 29, 2019 through the date this Court enters an order on class certification, were tenants of a residential rental property in Massachusetts managed by Greystar and were charged and paid Legal Fees Greystar posted to a tenant's ledger that were not awarded by a court. Excluded are any persons, and any charges, to the extent the fees or costs were the subject of an agreement for judgment in which the person agreed to pay them.

[Dkt. 102 at 1; see Dkt. 103 at 9]. The motion also excludes the judges presiding over this action and their families; GREP Atlantic, entities that control it or that it controls, and their legal representatives; and persons who timely request exclusion. [Dkt. 102 at 1-2]. "Legal Fees" are defined as "any attorneys' fees and court costs Greystar invoices a tenant when seeking to evict." [Dkt. 103 at 8 n.2]. The Court adopts this definition for the remainder of this opinion. Plaintiffs seek certification under Rule 23(b)(3) and, alternatively or as a hybrid, under Rule 23(b)(2), and they ask that the named Plaintiffs be appointed class representatives and their counsel class counsel. [Dkts. 102 at 1-2; 103 at 25-27].

## II. LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Therefore, the burden of proof lies on the plaintiff to demonstrate that the proposed class satisfies the required elements of Rule 23(a) and 23(b). Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). When determining whether to certify a class, "[a] district court must conduct a rigorous analysis" to ensure that all the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are met. Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). While this analysis may overlap with the merits of the underlying claim, the inquiry must only extend to what is necessary to determine whether Rule 23 has been satisfied. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013). Class certifications are not set in stone. Courts may "alter[] or amend[]" certifications, including decertifying a class, "before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

## III. DISCUSSION

The Court first addresses whether the proposed class satisfies the four requirements of Rule 23(a). It then considers whether common questions predominate and whether a class action is the superior method of adjudication under Rule 23(b)(3). As explained below, the Court concludes that Plaintiffs have carried their burden under Rules 23(a) and 23(b)(3), and it addresses their Rule 23(b)(2) request at the end of this discussion.

### A. Requirements of Rule 23(a)

Rule 23(a) requires a showing that (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Smilow, 323 F.3d at 38 (citing Fed. R. Civ. P. 23(a)). Each requirement is met here.

*Numerosity*. The class is so numerous that joinder is impracticable. The threshold for numerosity is low, and "[c]lasses of 40 or more have been found to be sufficiently numerous." DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 98 (D. Mass. 2010); see Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009). Greystar's own spreadsheets, which its Rule 30(b)(6) witness Casteel confirmed reflect legal fees charged to tenants, indicate that more than 2,000 Massachusetts tenants across more than 70 properties were charged and paid legal fees. [Dkts. 103-5 at 165:20-166:13; 103-9 to 103-11; see Dkt. 103 at 16]. Even if, as Defendants contend, some of those charges are unrelated to eviction [Dkt. 106 at 16-17], the class comfortably exceeds forty members. Defendants do not contest numerosity. [See generally Dkt. 106]. Numerosity is therefore satisfied.

*Commonality*. Rule 23(a)(2) requires "questions of law or fact common to the class." The "threshold for commonality under Rule 23(a)(2) is not high." In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig., 270 F.R.D. 45, 54 (D. Mass. 2010). There must be at least one common issue of fact or law whose resolution will "affect all or a substantial number of the class members," id., but a plaintiff need not show that every fact and legal issue is shared by each class member, In re Lupron Mktg. & Sales Pracs. Litig., 228 F.R.D. 75, 88 (D. Mass. 2005).

That threshold is easily met. Every class member was a tenant at a Greystar-managed property who was charged, and paid, Legal Fees that no court awarded. That shared circumstance gives rise to common questions, including: (1) whether Greystar's practice of posting Legal Fees to tenants' ledgers before any court awarded them violates Mass. Gen. Laws

ch. 93A, §§ 2 and 9, and the Massachusetts debt-collection regulations, 940 C.M.R. § 7.07; (2) whether Greystar had any contractual or statutory right to charge such fees absent a court order; (3) whether the form-lease provision purporting to authorize pre-judgment fee-shifting is enforceable in light of Mass. Gen. Laws ch. 186, § 20, Massachusetts public policy, and the regulatory framework governing landlord-tenant relations; (4) whether Plaintiffs and the class are entitled to declaratory relief with respect to this practice; and (5) whether Plaintiffs and the class are entitled to actual, statutory, or treble damages, and attorney's fees, under Mass. Gen. Laws ch. 93A, § 9.

Defendants argue that onsite staff had discretion whether to post these fees, and that this discretion defeats commonality. [Dkt. 106 at 7, 11-12]. But discretion over whether to post a fee determines who is in the class, because only tenants who were charged and paid Legal Fees fall within it. If onsite staff elect not to charge Legal Fees to certain tenants, those tenants will simply not be members of the class. Therefore, Plaintiffs have satisfied the commonality requirement.

*Typicality*. To satisfy typicality, Plaintiffs need only demonstrate that their "injuries arise from the same events or course of conduct as do the injuries of the class" and that the "plaintiff's claims and those of the class are based on the same legal theory." In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008). Plaintiffs' claims rest on the same essential events and the same legal theories as those of the other class members. Plaintiffs and the putative class members were all allegedly required to pay attorney's fees absent a court order, and Plaintiffs' theories of recovery, grounded in Chapter 93A, are common to the class as a whole.

Defendants' primary objection to typicality appears to be that individual differences, including defenses unique to each tenant, predominate. [Dkt. 106 at 10 n.3, 15 n.11, 22-23]. But

"[t]he 'typicality' and 'commonality' prerequisites of Rule 23 do not require that all of the putative class members share identical claims"; rather, "[t]hese prerequisites mandate only that complainants' claims be common, and not in conflict." Guckenberger v. Bos. Univ., 957 F. Supp. 306, 325 (D. Mass. 1997) (quoting Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988)). That standard is easily met here, and Plaintiffs' claims are typical of those of the absent class members.

Nor are Plaintiffs subject to a unique defense that threatens to become the focus of the litigation. See Credit Suisse-AOL, 253 F.R.D. at 23. Defendants argue that the $490 and $162 credits applied to Plaintiffs' ledger set them apart. [Dkt. 106 at 15 n.11]. But the Court has already held that reimbursement did not moot Plaintiffs' claims [Dkt. 29 at 4-5], and Defendants' own position is that credits and reimbursements recur across the class [Dkt. 106 at 14-15], which makes their effect a common question of damages rather than a defense unique to Plaintiffs. Finally, Defendants' data analysis does not list Matlack among the residents of The Eddy with an "Eviction/Legal Recovery" charge [Dkt. 106-11 ¶ 4], but that appears to reflect how the charges were recorded rather than who owed them. Cordeiro and Matlack leased and lived in Unit 1010 together [Dkts. 29 at 1; 106-13 at 2-3], and the charges were posted to their shared household ledger, which names both of them. [Dkt. 103-4 at 2]. Both Plaintiffs were therefore charged and paid the Legal Fees at issue and are members of the class.

*Adequacy.* The class is adequately represented by Plaintiffs, as class representatives, and by their counsel. Rule 23(a)(4) requires that the class representatives' interests not conflict with those of other class members and that class counsel be able to represent the interests of the class adequately. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Defendants object to Plaintiffs serving as class representatives based on a series of inflammatory text messages between the Plaintiffs about one of Defendants' employees. [Dkts. 106 at 21-22; 106-17]. While the Court finds those messages disturbing and concerning, they do not reveal a true conflict of interest or a vendetta against Defendants that would cause Plaintiffs to breach their fiduciary duty to the class. Plaintiffs disavowed those sentiments as goals of this litigation. When asked about the goals of the case reflected in those messages, Cordeiro answered, "Those are not my goals in this case." [Dkt. 103-2 at 220:22-24]. Asked whether getting that employee fired would be one of his goals in bringing this case, Matlack answered, "In this case, no. I don't think that's something we could request, and it's not what we're seeking, or at least it's not what I am seeking." [Dkt. 103-7 at 143:23-144:8].

As other courts have recognized, "litigation is often born of ill will, and this is no less true in class actions. To expect these plaintiffs to be completely neutral when they allege that the defendants have defrauded them and others . . . is to expect too much." Cnty. of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1415-16 (E.D.N.Y. 1989), aff'd in part, rev'd in part on other grounds, 907 F.2d 1295 (2d Cir. 1990). Moreover, class counsel, who owe obligations to the class as a whole and not merely to their individual clients, will responsibly guard against any animus Plaintiffs may hold toward Defendants. See Hill v. The Trib. Co., No. 05 C 2602, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("Class counsel's primary obligation is to the interests of the class and not any conflicting interests of the named plaintiff who may have been the initial client."). Like the other class members, Plaintiffs were subjected to the challenged practice and share the class's interest in obtaining relief. See Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 71 (D. Mass. 1999) (finding the class representatives to be adequate because, "like the [c]lass overall, [the named plaintiffs] fell victim to [the defendant's] alleged scheme and, as

such, the representatives and the [c]lass share the same interest in seeking remediation for their injury"). The Court therefore finds that both Plaintiffs are adequate class representatives.

Defendants' remaining objections—that Plaintiffs intend to pursue separate claims arising from their tenancy and face Defendants' counterclaim for their final balance [Dkt. 106 at 22-23]—do not reveal a conflict with the class that goes to the heart of this litigation. Any future claims Plaintiffs may bring are speculative, and the counterclaim, by Defendants' own account, does not seek the eviction-related fees at issue here. [Dkt. 106-3 at 2; see Dkt. 118 at 15-16]. See Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012) (citation modified) (holding that only conflicts "fundamental to the suit" that "go to the heart of the litigation" defeat adequacy).

Defendants next argue that Plaintiffs' counsel are inadequate because they advised Plaintiffs that accepting an individual settlement offer would be "unethical" and would "piss the judge off." [Dkt. 106 at 23-24]. Defendants say that advice was deliberately misleading, because Rule 23(e) does not require court approval of an individual settlement before a class is certified. [Id.]. Plaintiffs assert that the messages are privileged. [Dkt. 118 at 14 n.8]. The Court need not resolve that dispute, because the messages were read into the deposition record that Plaintiffs submitted, and even considering them, they do not show that counsel are inadequate. [See Dkts. 103-2 at 289:13-297:19; 103-7 at 205:5-206:13]. Matlack initially understood an individual settlement to be "subject to approval by the judge." But he testified that he had "misunderstood how the process would work," that counsel forwarded the settlement offer to Plaintiffs, and that he believed he could settle individually. [Dkt. 103-7 at 190:2-9, 191:16-23, 192:3-14, 205:24-206:13]. Cordeiro likewise testified that his view of the offer was his own interpretation, that he "wasn't instructed," and that he could accept it. [Dkt. 103-2 at 278:11-19, 280:1-2]. On this

limited record, the Court cannot conclude that counsel misled Plaintiffs or advised them to reject a settlement offer. The Court therefore finds that the adequacy requirement, and with it Rule 23(a), is satisfied.

**B. Ascertainability**

Although Rule 23 does not mention it, courts in this circuit recognize "an implicit requirement that 'a putative class be ascertainable with reference to objective criteria.'" Mantha v. QuoteWizard.com, LLC, 347 F.R.D. 376, 391 (D. Mass. 2024) (quoting Muniz v. XPO Last Mile, Inc., 342 F.R.D. 189, 199 (D. Mass. 2022)); see In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015); Matamoros, 699 F.3d at 139. Plaintiffs need not identify every class member at the certification stage. Rather, "the court must be satisfied that, prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members." Nexium, 777 F.3d at 19. That mechanism must be administratively feasible, see Bais Yaakov of Spring Valley v. ACT, Inc., 12 F.4th 81, 92 (1st Cir. 2021), and must preserve the defendant's opportunity to challenge individual class members' proof of injury, see In re Asacol Antitrust Litig., 907 F.3d 42, 52-53, 58 (1st Cir. 2018). But "individualized factual determinations do not create inefficiency or unfairness if they can be made pursuant to rote, mechanical processes." Thrower v. Citizens Disability, LLC, No. 20-10285-GAO, 2022 WL 3754737, at *4 (D. Mass. Aug. 30, 2022).

Plaintiffs contend that membership turns on three objective criteria: whether a tenant was charged Legal Fees, whether the tenant paid them, and whether the fees were awarded by a court or were the subject of an agreement for judgment in which the tenant agreed to pay them. [Dkt. 103 at 13-15]. Defendants respond that the class is not ascertainable for four reasons: (1) Greystar's ledger codes do not reliably identify eviction-related attorney's fees; (2) the records

do not show whether a given payment was applied to those fees; (3) Greystar lacks data for properties whose owners license their own software; and (4) applying the agreement-for-judgment exclusion would require locating and interpreting thousands of agreements, some under seal. [Dkt. 106 at 16-19]. The Court addresses each in turn.

First, Defendants rely on Casteel's testimony, described above, that a ledger entry coded "legal" may reflect charges unrelated to eviction. [Dkt. 103-5 at 146:13-147:20, 174:12-177:4, 184:5-10]. But the class is not defined by ledger codes. It is defined by "Legal Fees," meaning the attorney's fees and court costs Greystar invoices a tenant when seeking to evict. [Dkt. 103 at 8 n.2]. The codes are only a starting point. Whether a given charge reflects eviction counsel's invoice can be determined from the invoices themselves. Donlin testified that tenant-specific charges are applied to the ledger on receipt of counsel's invoice [Dkt. 103-1 at 55:16-56:5], that a copy of each legal invoice is retained to support the general ledger reported to the property's owner [id. at 23:24-24:17], and that the invoices generally break out court costs from attorney's fees [id. at 106:7-15]. Matching ledger entries to counsel's invoices is the kind of individual determination that "can be accomplished using computer records, clerical assistance, and objective criteria," Smilow, 323 F.3d at 40, not an individualized adjudication. That such a review may be laborious does not defeat certification, particularly because class certification determinations "depend on initial prediction and are always subject to revision." Tardiff v. Knox Cnty., 365 F.3d 1, 6 (1st Cir. 2004). Nor would "a . . . defendant's failure to maintain adequate records" be "a legitimate basis for denying certification." Thrower, 2022 WL 3754737, at *2.

The Court need not resolve the parties' dispute over Donlin's errata. [Dkts. 103 at 9 n.4; 106 at 7 n.2]. Even accepting the errata—which states that ledgers alone are insufficient, that invoices must be consulted, and that Greystar no longer has every historical invoice, including

for properties it no longer manages [Dkt. 103-3 at 3-5]—the result is the same. Where invoices are available, the review is document-by-document, not subjective. Where they are not, other objective records, including the files of Greystar's eviction counsel and Housing Court records, may fill the gap. [See Dkt. 118 at 9, 12]. Housing Court dockets, for example, can be searched by landlord and show whether and when a summary process eviction action was filed against a tenant [Dkt. 119 ¶¶ 4-7, 12], which can help distinguish eviction-related charges from the other "legal" charges Casteel described. And if the gap cannot be filled, the Court may limit the class to charges that such records document. See Fed. R. Civ. P. 23(c)(1)(C).

Second, Defendants argue that, where a tenant's ledger never reaches a zero balance, there is no objective way to tell whether a payment was applied to the challenged fees. [Dkt. 106 at 17-18]. However, the record supplies one. Greystar's SOP 2080 applies payments to outstanding fees before rent unless state law prohibits. [Dkt. 103-1 at 34:2-20]. Although the ledger itself does not show how a payment was applied, each platform applies payments according to its own settings, and the ledger records the date and amount of every charge and payment. [Dkts. 103-1 at 64:3-65:6; 103-5 at 177:15-18]. Indeed, in settling a Massachusetts class action over late fees, another Greystar entity, Greystar Management Services, L.P., identified class members by extracting "transaction-level records from Greystar's internal property management and accounting platforms"—the same Yardi, OneSite, and Entrata platforms at issue here—including "the date and amount of any tenant payment applied toward that late fee." [Dkt. 119-4 at 2, 6, 14; see Dkt. 118 at 13]. Although a tenant's specific payment instructions or agreements "could" override that default allocation [Dkt. 106-11 ¶ 6(d)], Defendants identify no class member whose payment was in fact redirected, and the Court will not deny certification on that speculation. See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d

288, 298 (1st Cir. 2000). Should a genuine dispute about the application of a particular payment arise, it can be resolved through the claims process.

Third, Defendants note that Greystar's production excludes properties whose owners license their own property management software, because Greystar cannot access that data. [Dkts. 106 at 17 & n.14; 103-5 at 156:2-24]. That limitation does not make membership turn on subjective criteria. The same objective questions, namely whether a tenant was charged and paid Legal Fees that no court awarded, can be answered from those properties' ledgers and invoices. Indeed, Donlin testified that owner-licensed versions of the same software generally have the same functionality for tracking payments, though the categories used to record charges may vary. [Dkt. 103-1 at 41:3-22]. To the extent those records prove unavailable, the Court may redefine the class to tenants of properties whose ledger data Greystar maintains. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 60 (1st Cir. 2013); Fed. R. Civ. P. 23(c)(1)(C).

Fourth, the agreement-for-judgment exclusion does not render the class unascertainable. Whether an agreement for judgment exists can be determined from the Housing Court dockets, the files of Greystar's eviction counsel, and Greystar's own records. [Dkts. 103 at 14-15; 118 at 12]. Plaintiffs have already shown how. Using the list of properties Greystar identified in discovery, Plaintiffs' counsel searched the Trial Court's electronic case-access system for summary process eviction cases involving those properties and compiled each case's number, filing date, filing party, court, status, and disposition, including whether the case ended in an agreement for judgment, a voluntary dismissal, or a court order. [Dkt. 119 ¶¶ 3-10 & Ex. 1]. Those records can be cross-referenced against Greystar's tenant ledgers, and the search can be repeated to capture cases filed after counsel's January 2026 cutoff. [Id. ¶¶ 9, 12-13]. That approach works even where a case is sealed, because sealing limits public access to a case file,

not the parties to it [see id. ¶ 14], and the sealing statute itself allows a party to petition for access to the sealed records of its own case. See Mass. Gen. Laws ch. 239, § 16(h).

Once an agreement is located, the exclusion asks a single textual question: whether the tenant agreed, in that agreement, to pay the fees or costs at issue. [Dkt. 103 at 9]. Because the definition excludes fees or costs only "to the extent" the tenant agreed to pay them [Dkt. 102 at 1], answering that question means reading the agreement's operative terms and comparing them with the charges on the tenant's ledger. That the agreements vary in wording [see Dkt. 106 at 18-19] does not change the nature of the task. Reading the terms of a written agreement is a mechanical review, not a subjective inquiry into each tenant's intent. See Thrower, 2022 WL 3754737, at *4. Any release language in those agreements [Dkt. 106 at 18 n.17] goes to an affirmative defense, which, as discussed below, does not defeat certification.

Accordingly, the Court concludes that the proposed class is defined by objective criteria and that membership can be determined through an administratively feasible review of Greystar's ledgers, eviction counsel's invoices, and court records. Thus, the class is ascertainable.

**C. Requirements of Rule 23(b)**

In addition to satisfying the Rule 23(a) requirements, Plaintiffs must satisfy at least one of the prongs under Rule 23(b). Plaintiffs propose class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Smilow, 323 F.3d at 38 (citing Fed. R. Civ. P. 23(b)(3)). Matters "pertinent" to evaluating predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution

or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). Rule 23(b)(3) does not require a plaintiff to "prove that each element of [the] claim is susceptible to classwide proof." Amgen, 568 U.S. at 469 (citation modified). Nonetheless, courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Mowbray, 208 F.3d at 298. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation modified); see Smilow, 323 F.3d at 39 ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.").

To prevail on their Chapter 93A claim, Plaintiffs will need to prove "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Downing v. Keurig Green Mountain, Inc., No. 1:20-CV-11673-IT, 2021 WL 2403811, at *5 (D. Mass. June 11, 2021) (quoting Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 71 (1st Cir. 2020)). Each

element can be proven with evidence common to the class. As to the first, Plaintiffs challenge a single practice: Greystar's charging tenants attorney's fees and costs in eviction proceedings before any court awarded them. [See Dkt. 29 at 9 (identifying "the central question" as whether Defendants "had the right to impose attorney's fees and costs absent a court order")]. Whether that practice is unfair under Chapter 93A turns on Greystar's uniform conduct, not on anything particular to an individual tenant, and can be answered once for the entire class.

Plaintiffs' per se theories go to the same element. Plaintiffs contend that the practice violates the Attorney General's debt collection regulations, 940 C.M.R. § 7.07(8), (16), and Mass. Gen. Laws ch. 93, § 49. [Dkts. 13 ¶¶ 67-68; 118 at 7-8]. A per se violation, if established, satisfies only the first element of a Chapter 93A claim. See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 120 (1st Cir. 2014) (noting that "per se findings satisfy Chapter 93A's first prong only (i.e., that the conduct at issue is unfair or deceptive)"). But because each per se theory turns on the same uniform practice, it too can be resolved on classwide proof.

The remaining elements are equally straightforward. The alleged injury is the challenged charge itself: the attorney's fees and costs recorded on each tenant's ledger and paid by that tenant. The causal connection is just as direct, because the injury flows from the charge itself and not from any decision an individual tenant made in response to it. Whether, and how much, each tenant paid can be determined from Greystar's own ledgers. [See Dkt. 118 at 11]. For that reason, Douglas v. EF Inst. for Cultural Exch., Inc., No. 20-CV-11740-DJC, 2024 WL 3070251 (D. Mass. June 20, 2024), does not control. There, individual issues of causation predominated because the record gave "ample reason . . . to doubt whether, but for the Booking Conditions, all class members . . . would have acted differently." Id. at *12. No comparable inquiry into why

individual tenants acted is needed here. The central questions of liability are therefore common to the class, and Defendants' arguments to the contrary are unpersuasive.

Defendants argue that Mass. Gen. Laws ch. 186, § 11 produces individual issues that overshadow the classwide questions. [Dkt. 106 at 12 & n.5]. Section 11 gives tenants a statutory right to cure: a tenant can stop the eviction and keep the lease alive by paying all past-due rent, interest on the rent, and the costs of suit on or before the day the answer is due in the eviction action. At the outset, whether Section 11's reference to "costs of suit" includes attorney's fees is itself a question of law common to the class. "In the context of civil proceedings, taxable costs ordinarily refer to those costs that are recoverable pursuant to G. L. c. 261, §§ 1 et seq." Styller v. Nat'l Fire & Marine Ins. Co., 95 Mass. App. Ct. 538, 544 (2019).

To the extent Defendants contend that Section 11 authorized them to collect attorney's fees before judgment, that contention will rise or fall for every class member alike. As for court costs paid within the cure period, whether a payment preceded the answer date can be determined objectively by comparing the payment date on Greystar's ledger with the answer date in the summary process record. Accordingly, the Court is not persuaded that Section 11 gives rise to individual questions that predominate over the common ones.

Defendants' arguments concerning releases, arbitration provisions and class-action waivers, consent and settlement, and preclusion all go to potential defenses against specific class members. None of these defenses defeats class certification. See Smilow, 323 F.3d at 39 ("Even in the unlikely event that individual waiver determinations prove necessary, the proposed class may still satisfy the predominance requirement . . . . Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members"); see also Wallace v. Greystar Real Est. Partners, LLC,

No. 1:18CV501, 2022 WL 561411, at *3 (M.D.N.C. Feb. 24, 2022) (rejecting argument that landlord's accord-and-satisfaction defense to eviction-fee claims required asking each tenant whether she thought she was settling, because the defense turns on objective criteria). The same logic applies here, and the Court declines to deny class certification merely because affirmative defenses may be raised against individual class members.

As for arbitration agreements and class-action waivers in particular, Defendants contend that "[m]any tenants also signed waivers regarding class-action participation as part of their original lease agreements." [Dkt. 106 at 13]. The only such agreement in the record, however, is a single lease dated September 26, 2025, nearly two years after this action was filed, that includes an arbitration addendum with a class-action waiver. [Dkt. 106-5 at 2, 9-10]. Greystar first invoked such agreements in supplemental interrogatory answers served the day discovery closed, which state that it implemented a Massachusetts arbitration addendum in August 2024. [Dkt. 119 ¶¶ 56-58; see Dkt. 119-3]. Defendants have not identified any class member who signed such an agreement and have not moved to compel arbitration against anyone. Indeed, Defendants maintain that they could not do so before certification, because absent class members are not yet parties. [Dkt. 106 at 13 n.6]. On this record, the possibility that some class members may be bound by such agreements does not defeat predominance. Whether a particular tenant signed one can be determined from Greystar's own leasing records, and the Court need not decide now whether any such agreement is enforceable, whether Defendants have forfeited the right to enforce it, or what effect to give agreements obtained from putative class members after this litigation began. [See Dkts. 106 at 13 n.6; 118 at 10 & n.6]. If Defendants later establish that an identified class member is bound by an enforceable agreement, the Court may modify the class definition accordingly. See Fed. R. Civ. P. 23(c)(1)(C).

Defendants' anticipated counterclaims for unpaid rent likewise do not defeat predominance. [Dkt. 106 at 13-14 & nn.9-10]. Whether posting unadjudicated fees to a tenant's ledger is unfair does not depend on how much rent that tenant owed, and any claim Defendants may have against an individual class member for unpaid rent can be pursued separately or addressed as a setoff when damages are determined. See Rental Car of N.H., Inc. v. Westinghouse Elec. Corp., 496 F. Supp. 373, 381-82 (D. Mass. 1980) (finding substantial counterclaims against the plaintiffs no obstacle to class certification). Although courts have differed on the weight such counterclaims deserve, see, e.g., Heaven v. Tr. Co. Bank, 118 F.3d 735, 737-38 (11th Cir. 1997) (affirming denial of certification where the lessor's compulsory counterclaims against class members would require individual factual determinations), Defendants identify no counterclaim pending against any absent class member, and any class member who faces one may opt out after notice.

Finally, Defendants argue that Plaintiffs' damages model fails under Comcast. In Comcast, the Supreme Court explained that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." Comcast, 569 U.S. at 35. Here, damages can be readily determined by referencing Greystar's own records to identify which tenants were charged attorney's fees during an eviction proceeding. Defendants contend that this approach ignores credits and reimbursements. [Dkt. 106 at 14-15 & n.11]. But credits and reversals appear on the same ledgers, and Plaintiffs' measure—Legal Fees paid, net of any credit or reversal—accounts for them. [Dkt. 118 at 11]. Offsets are therefore not a barrier to determining damages. Defendants also contend that damages are limited to the difference between what a court would have awarded and what a tenant paid, so that they may offer tenant-specific evidence that the fees were reasonable. [Dkt. 106 at 15-16 & n.12]. But Plaintiffs'

theory is that collecting fees that no court has awarded is itself the injury, and their measure of damages tracks that theory, as Comcast requires. Whether Defendants' alternative measure is the correct one is itself a question of law common to the class, which the Court can resolve before trial; if the answer would require individualized inquiries into reasonableness, the Court may revisit certification. See Fed. R. Civ. P. 23(c)(1)(C). Accordingly, individual differences in damages do not preclude class certification.

**2. Superiority**

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" Amchem, 521 U.S. at 617 (citation modified). That concern is squarely presented here. Plaintiffs challenge a uniform policy that has affected many tenants who rented from Defendants in the same way, and class litigation is therefore the superior vehicle for resolving their claims. All four Rule 23(b)(3) factors favor certification. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

First, class members have little interest in individually controlling separate actions. For example, the challenged fees here are modest in comparison to the cost of litigating a Chapter 93A claim (Plaintiffs contend they paid $652), and the tenants who paid them did so in connection with eviction proceedings, circumstances in which few are positioned to bring an affirmative lawsuit on their own. [Dkt. 103 at 11, 24]. Further, Defendants have not identified any class member who wishes to pursue an individual action.

Second, the litigation already begun by or against class members does not weigh against certification. Although the challenged fees arose in summary process actions that Defendants

brought against tenants, the class excludes fees that a court awarded and fees that a tenant agreed to pay in an agreement for judgment. [Dkt. 103 at 9, 23]. Defendants identify no pending action in which a class member is challenging these fees. [See Dkts. 106 at 20 n.20; 103 at 24]. If any such challenges exist, they can be identified through objective records, including Greystar's own.

Third, it is desirable to concentrate these claims in a single forum. Every class member's claim arises under the same Massachusetts statute and challenges the same practice of the same Defendants. Resolving those claims together avoids the risk of inconsistent rulings across hundreds of separate summary process eviction proceedings.

Fourth, Defendants have not shown that a class action would present unusual difficulties in management. The fees at issue appear in Defendants' own ledgers, and, as explained above, the class definition's exclusions can be applied through objective records. Nor would the agreement-for-judgment exclusion require the Court to "reconstruct" thousands of eviction proceedings, as Defendants contend. [Dkt. 106 at 20]. The exclusion does not ask the Court to revisit any order of the Housing Court. It asks only whether the tenant agreed, in an agreement for judgment, to pay a particular fee, which the docket and the agreement itself will show. Far from undermining the Housing Court's orders, the exclusion respects them by removing from the class any fee the Housing Court has already addressed. And to the extent that applying the exclusion requires some review of individual records, that does not defeat certification. See Nexium, 777 F.3d at 21.

Defendants contend that Plaintiffs have not shown that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." [Dkt. 106 at 19]. The Court is not persuaded. The Massachusetts Housing Court is not a superior alternative forum. As Plaintiffs correctly note, Massachusetts law reflects "a strong public policy in favor of the aggregation of small consumer protection claims," so that harmful practices are corrected "even

where individual plaintiffs might not be incentivized to take action." Blake v. Hometown Am. Cmtys., Inc., 486 Mass. 268, 281 (2020) (quoting Feeney v. Dell Inc., 454 Mass. 192, 201 (2009)). Requiring hundreds, if not thousands, of tenants to bring individual actions in the Housing Court would be impracticable and a waste of judicial resources, and the Court declines to do so. That is especially true for class members whose summary process eviction cases have ended, for whom the proceeding Defendants invoke is no longer available. Cf. Commonwealth v. Chatham Dev. Co., 49 Mass. App. Ct. 525, 529 (2000) (approving civil penalties in an Attorney General action because no individual tenant had an economic incentive to sue over the fee).

Finally, Defendants' arguments regarding Eddy Owner do not warrant denying certification, because Plaintiffs do not seek to certify any class claim against Eddy Owner. The proposed class is defined by reference to Greystar's conduct [Dkt. 102 at 1], and Plaintiffs define "Greystar" as GREP Atlantic, LLC. [Dkt. 103 at 8 & n.1]. The Court therefore certifies the class only as to Plaintiffs' claims against Greystar. Plaintiffs' individual claims against Eddy Owner, and the counterclaim, are unaffected, and tenants of The Eddy who otherwise meet the class definition are members of the class as to their claims against Greystar.

Defendants' related contention fares no better. They argue that, because the class reaches tenants of properties Eddy Owner does not own, those tenants' claims would require joinder of the unsued property owners, along with any counterclaims those owners may have, under Rule 19(a). [Dkt. 106 at 20-21]. But Rule 19(a) does not require joinder of the non-party property owners. Those owners have claimed no interest in this action, so neither prong of Rule 19(a)(1)(B) is implicated. See Fed. R. Civ. P. 19(a)(1)(B). And complete relief can be accorded among the existing parties. See Fed. R. Civ. P. 19(a)(1)(A). Plaintiffs challenge fees that Greystar, as property manager, assessed and collected, and Greystar is already a party. To the extent the non-party

owners share responsibility for those fees as Greystar's principals, they would be at most jointly liable with Greystar, and a party that may be jointly liable with a defendant is not a required party under Rule 19. See Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) (per curiam). Any counterclaims the owners may hold against class members are not before the Court and may be pursued separately. Cf. Rental Car, 496 F. Supp. at 381. Accordingly, the Court finds that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**3. Rule 23(b)(2)**

Plaintiffs also ask the Court to certify a class under Rule 23(b)(2) for purposes of the declaratory and injunctive relief they seek, either alongside the Rule 23(b)(3) class as a hybrid or, if the Court declines to certify a Rule 23(b)(3) class, in its place. [Dkt. 103 at 25-26]. Because the Court has certified a Rule 23(b)(3) class, the alternative request is moot. The Court also declines to certify a hybrid class. The declaration Plaintiffs seek concerns the lawfulness of charges already imposed and collected [id. at 25], which is the same liability question the Rule 23(b)(3) class will resolve. Members of a Rule 23(b)(2) class, unlike members of a Rule 23(b)(3) class, have no right to opt out, see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011), so certifying both classes for the same claims could bind tenants who opt out of the Rule 23(b)(3) class to a declaratory judgment on the very question they chose not to litigate here. Plaintiffs do not explain what a Rule 23(b)(2) class would add to the liability determination the Rule 23(b)(3) class will receive. The request for certification under Rule 23(b)(2) is therefore denied without prejudice.

The declaratory relief Plaintiffs seek can, however, be adjudicated within the Rule 23(b)(3) class, whose members will receive notice and the opportunity to opt out. The Court therefore includes Count IV among the class claims to the extent it seeks a declaration regarding the lawfulness of Legal Fees already charged and collected. Because that declaration concerns past

charges rather than prospective relief, and because the Court does not certify any class claim for injunctive relief, the Court does not reach Defendants' argument that Plaintiffs, as former tenants, lack standing to seek prospective relief. [Dkt. 106 at 24-25].

**D. Appointment of Class Counsel**

Plaintiffs seek the appointment of class counsel. In appointing class counsel, the Court must consider the work counsel has done in identifying or investigating potential claims, counsel's experience in handling similar actions, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Each factor supports appointment. Counsel investigated and pleaded these claims, defeated Defendants' Motion to Dismiss in part, and took Rule 30(b)(6) discovery on Greystar's practices and data. [See Dkts. 29; 103-1; 103-5]. Plaintiffs' counsel have also litigated several class actions challenging eviction fees charged to tenants. [Dkt. 103-12 at 11-12]. In one, a court certified a class of tenants at Greystar-managed properties in North Carolina who paid such fees and observed that counsel, including two of the attorneys here, appeared to be "experienced litigators with extensive prior exposure to class action suits." Wallace, 2022 WL 561411, at *4. Together, counsel combine consumer class-action experience with Massachusetts landlord-tenant expertise and have committed the resources necessary to prosecute this case. [Dkt. 103 at 20, 26; see Dkt. 103-12]. Accordingly, the Court will appoint Plaintiffs' counsel as Class Counsel.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification [Dkt. 102] is **GRANTED**. The Court certifies the following class under Rule 23(b)(3):

> All persons who, from November 29, 2019, through the date of this Order, were tenants of a residential rental property in Massachusetts managed by GREP Atlantic, LLC and were charged and paid Legal Fees GREP Atlantic, LLC posted to a tenant's ledger that were not

> awarded by a court. Excluded are any persons, and any charges, to the extent the fees or costs were the subject of an agreement for judgment in which the person agreed to pay them. Also excluded are (a) any judge or magistrate judge presiding over this action and the members of their families; (b) GREP Atlantic, LLC, any entity in which GREP Atlantic, LLC has a controlling interest or that has a controlling interest in GREP Atlantic, LLC, and their legal representatives; and (c) all persons who timely and validly request exclusion. "Legal Fees" means any attorneys' fees and court costs GREP Atlantic, LLC invoices a tenant when seeking to evict.

The class claims are Plaintiffs' claim under Mass. Gen. Laws ch. 93A (Count I) and their claim for declaratory relief (Count IV), to the extent it seeks a declaration regarding the lawfulness of Legal Fees already charged and collected, against GREP Atlantic, LLC. The Court declines to certify any class claims against Eddy Owner, L.L.C.; Plaintiffs' individual claims against Eddy Owner, L.L.C., and the counterclaim proceed on an individual basis. Plaintiffs' request for certification of a class under Rule 23(b)(2) is **DENIED** without prejudice. Shaun Cordeiro and Kevin Matlack are appointed Class Representatives, and Bryson Harris Suciu & DeMay, PLLC; Maginnis Howard; the Legal Services Center of Harvard Law School; and Greater Boston Legal Services are appointed Class Counsel under Rule 23(g).

Within thirty (30) days of this Order, after conferring with Defendants, Plaintiffs shall file a proposed notice plan and form of notice consistent with Rule 23(c)(2)(B), including individual notice to all members who can be identified through reasonable effort from Defendants' records.

**SO ORDERED.**

Dated: October 19, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge